STATE of Wisconsin, Plaintiff-Respondent,

v.

John NORMAN, Defendant-Appellant-Petitioner.

Supreme Court

*No. 01–3303–CR. Oral argument April 10, 2003.—Decided July 1, 2003.*

2003 WI 72

(Also reported in 664 N.W.2d 97.)

506

510

For the defendant-appellant-petitioner there were briefs by *Angela Kachelski* and *The Shellow Group,* Milwaukee, and oral argument by *Angela Kachelski.*

For the plaintiff-respondent the cause was argued by *Edwin J. Hughes,* assistant attorney general, with whom on the brief was *Peggy A. Lautenschlager,* attorney general.

¶ 1. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE. This is a review of an unpublished decision of the court of appeals, affirming the judgment of conviction entered by the Circuit Court for Oneida County, Douglas T. Fox, Judge.[1] The defendant, John K. Norman, was charged with six counts of falsifying corporate

---

[1] *State v. Norman,* No. 01–3303–CR, unpublished slip op. (Wis. Ct. App. Aug. 20, 2002).

documents, in violation of Wis. Stat. § 943.39(1) (1999–2000),[2] and four counts of theft, in violation of Wis. Stat. § 943.20(1)(a) and (b). The charges stemmed from allegations that the defendant falsified retail purchase agreements and established a commission-splitting scheme while working as an employee of Shoeder's Marine and Sports Center. Following a jury trial, the defendant was convicted of six counts of falsifying documents and two counts of theft.

¶ 2. The defendant appealed his convictions, arguing for relief on four separate grounds. These same grounds form the defendant's argument in this court.

¶ 3. First, the defendant claims that the circuit court erred when it admitted the preliminary hearing testimony of a witness who was not present at trial, in violation of his constitutional right to confrontation. The defendant asserts that preliminary hearing testimony may never be admitted at a criminal trial on the ground that Wisconsin case law allows a circuit court to prohibit cross-examination of a witness about credibility.

¶ 4. The court of appeals held that that admission of the unavailable witness's preliminary hearing testimony did not violate the defendant's constitutional right to confrontation. We agree with the court of appeals. The witness's memory, credibility, or bias was not at issue at trial. Consequently, the inability of the defendant to cross-examine the witness at the preliminary hearing with questions that went to memory, credibility, or bias did not present an unusual circumstance that undermined the reliability of the witness's testimony in the present case.

_____

[2] All subsequent references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise indicated.

¶ 5. Second, the defendant claims that the circuit court erred when it excluded the hearsay testimony of a witness that the defendant sought to introduce as a prior inconsistent statement for purposes of impeachment. The court of appeals held that the error in excluding the prior inconsistent statements introduced by the defendant was harmless because defense counsel was able to effectively communicate the relevant information to the jury by other means. We agree with the court of appeals and conclude that it is beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.

¶ 6. Third, the defendant asserts that his right to a unanimous jury verdict was violated by the jury instruction that did not require that all members of the jury agree that the documents were falsified with the same criminal intent. Whether a jury instruction violates a defendant's right to a unanimous verdict involves a multi-step analysis. We conclude that the defendant has failed to develop his assertion and is not entitled to the court's consideration of this issue. We therefore hold that the circuit court did not err in instructing the jury.

¶ 7. Fourth, the defendant argues that the evidence presented at trial was insufficient to convict him beyond a reasonable doubt. On review of the evidence, we agree with the court of appeals that the defendant did not meet his burden of proving that the evidence, viewed most favorably to the State and the conviction, is so insufficient in probative value and force that it can be said as a matter of law that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt.

## I

¶ 8. The facts are as follows. The defendant began as a salesperson at Shoeder's Marine and Sports Center (Shoeder's Marine) in 1995. He was promoted twice, eventually becoming the general manager. In that position and in his prior positions with Shoeder's Marine, the defendant worked principally on commission. He also received monetary bonuses and perks, including the use of snowmobiles and boats. In 1999, the defendant was making plans to open his own snowmobile and marina business, and sales personnel and mechanics of Shoeder's Marine agreed to work for him when he opened his business. Shoeder's Marine would be affected by this competition.

¶ 9. In October 1999, Keith Shoeder, the owner of Shoeder's Marine, reported to the police that the defendant had altered sales documents to suggest that customers had purchased more products than they actually did. The defendant was arrested and a search warrant was executed for his home. The search turned up a snowmobile and a boat that Shoeder's Marine records indicated had been sold to customers of the dealership.

¶ 10. The defendant was charged with fraud for falsifying purchase agreements and with theft of Shoeder's Marine property. The fraud charges and one of the theft charges stemmed from several incidents of falsifying retail purchase agreements. The general fact pattern, however, was the same in each instance. A customer would purchase equipment from Shoeder's Marine, or trade in old equipment for new equipment, and receive a purchase agreement that accurately reflected the purchase or swap.

¶ 11. The purchase agreement for the same transaction on file with Shoeder's Marine, however, would

show the purchase of additional equipment or would fail to show that an item was traded in by the customer. The defendant would then take the additional equipment or trade-in for himself. Because Shoeder's Marine bookkeepers rely on the purchase agreements to keep track of the business's sales and inventory, altering the documents allowed the additional equipment to be removed from inventory lists.

¶ 12. The final theft charge was based upon an alleged commission-splitting scheme between the defendant and Dan Krehmeyer, a Shoeder's Marine salesperson. The defendant, as general manager, received a commission on all purchases whether he was the salesperson or not. The defendant apparently took advantage of this general commission by establishing a scheme in which he would let Krehmeyer sign the purchase agreement for some of the sales the defendant made, allowing the defendant to obtain his general manager commission, and then Krehmeyer would split his fifteen percent sales commission with the defendant as well.

¶ 13. At trial, the defendant testified that he took several products from Shoeder's Marine and falsified the purchase agreements to cover those items. The defendant, however, claimed that Keith Shoeder knew of his actions and gave him permission to take the products as job perks.[3] According to the defendant, changing the purchase agreement was a method of accounting for the inventory, not fraud. The defendant

_____

[3] Keith Shoeder denies ever giving the defendant permission to take the products or having any knowledge of falsified documents until he discovered the inaccurate purchase agreements in 1999.

denied that the commission-splitting scheme existed. Keith Shoeder disputed the defendant's account of the transactions.

¶ 14. The jury convicted the defendant on all six counts of falsifying documents and on two of the four counts of theft. He was acquitted of one count of felony theft and one count of misdemeanor theft.

¶ 15. Additional facts necessary for the resolution of each particular legal issue are included in the discussion of the legal issue.

## II

¶ 16. The first issue raised by the defendant is that the circuit court erred when it admitted into evidence the preliminary hearing testimony of a witness, Barbara Park, who was not present at trial. The defendant claims that the admission of this testimony violated his right to confrontation as guaranteed by the Sixth Amendment to the United States Constitution and Article I, Section 7 of the Wisconsin Constitution.[4]

¶ 17. At the preliminary hearing, Park testified that in 1998 she purchased a new Glastar motorboat

---

[4] The Sixth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."

Article I, Section 7 of the Wisconsin Constitution reads as follows:

SECTION 7. In all criminal prosecutions the accused shall enjoy the right to be heard by himself and counsel; to demand the nature and cause of the accusation against him; to meet the witnesses face to face; to have compulsory process to compel the attendance of witnesses in his behalf; and in prosecutions by indictment, or information, to a speedy public trial by an impartial jury of the

from Shoeder's Marine.[5] Then, in 1999, according to Park's testimony, she exchanged her used boat for a new Tracker Topper rowboat. Park made an even trade, paying only $11 for a license, which she paid in cash at the time of the exchange. Park further testified that she obtained a receipt which reflected her trade-in. She denied seeing or receiving a receipt or purchase agreement dated June 16, 1999, indicating a total purchase price for the rowboat as $1,004.81.[6] Finally, Park testified that she never dealt with the defendant, only a salesperson named "Dan."

¶ 18. The defendant asked only three questions of Park on cross-examination at the preliminary hearing. The first question confirmed that Park dealt with Dan Krehmeyer both times she was at Shoeder's Marine. The other two questions probed whether the Glastar boat had a leaking problem before it was traded in.[7]

---

county or district wherein the offense shall have been committed; which county or district shall have been previously ascertained by law.

[5] Park identified the purchase agreement at the preliminary hearing.

[6] The June 16, 1999, purchase agreement on file with Shoeder's Marine did not indicate that Park traded in a motorboat. Instead, the purchase agreement stated that Park purchased the rowboat in cash for $1,004.81. The defendant apparently kept the Glastar boat for himself and paid the $1,004.81 to Shoeder's Marine, an amount nearly half the value of the boat.

[7] The preliminary hearing testimony transcript of the cross-examination of Park reads as follows:

Q: Now, the person that you dealt with on both those occasions was the person you have described as Dan [Krehmeyer]; is that correct?

A: Correct.

¶ 19. The defendant objects to the admission of Park's preliminary hearing testimony at trial on two grounds.

¶ 20. First, the defendant's brief asserts, in passing and without explanation, that admitting Park's preliminary hearing testimony was error because Park was not "unavailable."

¶ 21. The State's motion to allow the reading of Park's preliminary hearing testimony was supported by an affidavit from the district attorney that Park suffered from a strangulated hernia and that her doctor advised her not to drive from her home in Indiana to Rhinelander. Park also declined an offer from the State to fly her to Rhinelander.

¶ 22. Wisconsin Stat. § 908.045(1) states that the former testimony of an unavailable witness is not excluded by the hearsay rule.[8] Section 908.04(1)(d)

Q: And did the first boat, the Glastar that—when you traded it in did you have some leaking problems with that?

A: No, sir. I never had the boat in the water.

Q: You don't know if there was any leaking problems or not?

A: No, sir.

[8] Wisconsin Stat. § 908.045(1) reads as follows:

908.045. Hearsay exceptions; declarant unavailable. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

(1) Former testimony. Testimony given as a witness at another hearing of the same or a different proceeding, or in deposition taken in compliance with law in the course of another proceeding, at the instance of or against a party with an opportunity to develop the testimony by direct, cross-, or redirect examination, with motive and interest similar to those of the party against whom now offered.

defines unavailability of a witness as including situations in which a declarant "is unable to be present or to testify at the hearing because of ... then existing physical ... illness or infirmity." The defendant offers nothing in support of his bald assertion that "Ms. Park was not unavailable." The circuit court found that Park was unavailable for the trial. On the basis of the defendant's lack of any argument on the issue, the circuit court's finding of unavailability must stand.

¶ 23. Second, according to the defendant, the prohibition on questions designed to challenge the credibility of a witness at a preliminary hearing makes the admission of preliminary hearing testimony at all criminal trials, including at the trial in the present case, a violation of an accused's federal and state constitutional rights to confrontation and cross-examination.[9]

■

¶ 24. Ordinarily, the admissibility of former testimony into evidence is a discretionary decision of the circuit court, and it will not be overturned unless the circuit court erroneously exercised its discretion.[10] Nevertheless, the question of whether the admission of evidence violates an accused's right to confrontation is a question of constitutional fact.[11] When determining a question of constitutional fact, we adopt the circuit court's findings of historical fact unless they are clearly

[9] *State v. Dunn*, 121 Wis. 2d 389, 397, 359 N.W.2d 151 (1984) (at a preliminary hearing a judge ascertains plausibility of a witness's story, and whether, if believed, it would support a bindover; the preliminary hearing judge cannot delve into the credibility of a witness).

[10] *State v. Tomlinson*, 2002 WI 91, ¶ 39, 254 Wis. 2d 502, 648 N.W.2d 367.

[11] *Id.*

erroneous, but we independently apply the appropriate constitutional standard to those facts.[12]

¶ 25. In *State v. Bauer,* 109 Wis. 2d 204, 325 N.W.2d 857 (1982), this court articulated a multi-step test for determining when hearsay evidence is admissible in a criminal trial without violating an accused's right to confrontation. The threshold question, the *Bauer* court ruled, is whether the evidence fits within a recognized hearsay exception.[13]

¶ 26. The defendant in the present case does not dispute that Park's preliminary hearing testimony fits within a recognized hearsay exception, Wis. Stat. § 908.045(1), if Park is unavailable under the statute.

¶ 27. The next step in the *Bauer* multi-step test is to determine whether an accused's right to confrontation has been violated by the admission of hearsay evidence under a recognized hearsay exception. To make this determination, a circuit court must decide whether two criteria are satisfied.

¶ 28. First, in many circumstances, the witness must be unavailable.[14] The mere absence of a witness does not render the witness unavailable at trial for

---

[12] *Tomlinson,* 254 Wis. 2d 502, ¶ 39. *See also State v. Williams,* 2002 WI 58, ¶ 7, 253 Wis. 2d 99, 644 N.W.2d 919 (citing *State v. Ballos,* 230 Wis. 2d 495, 504, 602 N.W.2d 117 (Ct. App. 1999)).

[13] *State v. Bauer,* 109 Wis. 2d 204, 210, 325 N.W.2d 857 (1982). For another application of the *Bauer* test, see *State v. Stuart,* 2003 WI 73, 262 Wis. 2d 620, 664 N.W.2d 82.

[14] *Tomlinson,* 254 Wis. 2d 502, ¶ 46 n.7; *Bauer,* 109 Wis. 2d at 210–13. The unavailability analysis at this step is derived from the Sixth Amendment to the United States Constitution, not a statute. *See Ohio v. Roberts,* 448 U.S. 56, 74 (1980).

constitutional purposes.[15] Rather, the burden is on the prosecution to demonstrate that the witness is absent despite the prosecution's "good-faith effort" to obtain the witness's presence at trial.[16] The circuit court concluded that Park was "unavailable." Again, the defendant makes no argument in this court to contradict the circuit court and offers no reason to support a holding that the State did not make a good-faith effort to obtain Park's presence at trial.

■

¶ 29. The second criterion established by the *Bauer* decision is that the evidence must bear some "indicia of reliability."[17] If the evidence fits within a "firmly rooted hearsay exception," a court may infer that the evidence bears the requisite indicia of reliability so long as no "unusual circumstance" exists that would warrant exclusion of the evidence.[18]

¶ 30. The preliminary hearing testimony of an unavailable witness is well recognized as a "firmly rooted hearsay exception."[19] Thus, the reliability of the hearsay evidence may be inferred in the instant case.[20]

---

[15] *Roberts,* 448 U.S. at 74.

[16] *Barber v. Page,* 390 U.S. 719, 724–25 (1968); *see also La Barge v. State,* 74 Wis. 2d 327, 336–39, 246 N.W.2d 794 (1976).

[17] *See Bauer,* 109 Wis. 2d at 215–16.

[18] *Id.* at 215.

[19] *Bauer,* 109 Wis. 2d at 216 (quoting *Roberts,* 448 U.S. at 66).

[20] Testimony at a preliminary hearing provides additional indicia of reliability as well. The defendant was present and represented by counsel; the defendant had an opportunity to cross-examine the witness; the witness was under oath subject to the penalties of perjury; and the proceedings were recorded.

¶ 31. The defendant makes two arguments to support his position that the admission of Park's preliminary hearing testimony violates his constitutional rights to confrontation.

■

¶ 32. The defendant's first argument asserts that the very brief cross-examination at the preliminary hearing in the instant case, entailing only three questions, constitutes an "unusual circumstance" that undermines the inference of reliability attributable to Park's preliminary hearing testimony.

■

¶ 33. However, the mere number of questions on cross-examination, standing alone, cannot be the determinative test of whether an "unusual circumstance" exists to render the preliminary hearing testimony inadmissible at trial. The defendant does not assert his cross-examination was limited in any way by the circuit court or the State except that he could not challenge the credibility of the witness. This limitation on cross-examination leads to the defendant's other argument.[21]

■

¶ 34. The defendant's second argument broadly asserts that the limitations on preliminary hearing cross-examination barring questions that go to the credibility of the witness inherently render the admission of preliminary hearing testimony at criminal trials

---

See *Tomlinson,* 254 Wis. 2d 502, ¶¶ 50–51; *Bauer,* 109 Wis. 2d at 219; *Nabbefeld v. State,* 83 Wis. 2d 515, 527, 266 N.W.2d 292 (1978).

[21] *See State v. Myren,* 133 Wis. 2d 430, 439–40, 395 N.W.2d 818 (Ct. App. 1986) (rejecting the argument that virtually no cross-examination is per se an unusual circumstance warranting exclusion of the preliminary hearing testimony).

a violation of the constitutional rights to confrontation. According to the defendant, the rights to confrontation include the right to challenge credibility.

¶ 35. We reject the defendant's argument that preliminary hearing testimony may never be admitted at a criminal trial just because Wisconsin case law prohibits cross-examination of a witness about credibility. The defendant asserts that admission of preliminary hearing testimony necessarily violates the constitutional rights to confrontation. That precise argument was made in *Bauer* and was rejected. The *Bauer* decision followed the lead of the Seventh Circuit in *United States ex rel. Haywood v. Wolff,* 658 F.2d 455 (7th Cir. 1981), *cert. denied,* 454 U.S. 1088 (1981), and concluded that the fact that cross-examination during a preliminary hearing is limited does not necessarily render the testimony inadmissible.[22] Indeed, cases throughout the country[23] and in Wisconsin have upheld the admissibility of preliminary hearing testimony for an unavailable witness in the absence of unusual circumstances.[24]

¶ 36. We agree with the defendant that the right to confrontation in the Sixth Amendment envisions the personal examination of a witness by the defendant. The purpose of confrontation and cross-examination is

---

[22] *Bauer,* 109 Wis. 2d at 218.

[23] *See* Francis M. Dougherty, Annotation, *Admissibility or Use in Criminal Trial of Testimony Given at Preliminary Proceeding By Witness Not Available at Trial,* 38 A.L.R. 4th 378 (1985 & Supp. 2002).

[24] *See, e.g., State v. Bintz,* 2002 WI App 204, ¶ 17, 257 Wis. 2d 177, 650 N.W.2d 913; *State v. Whiting,* 136 Wis. 2d 400, 416–17, 402 N.W.2d 723 (Ct. App. 1987); *State v. Myren,* 133 Wis. 2d at 437–40.

to test both the witness's memory and credibility in the presence of the fact finder.[25] "These means of testing accuracy are so important that the absence of proper confrontation at trial calls into question the ultimate integrity of the fact-finding process."[26] However, this fundamental right to confrontation must, at times, be dispensed with in order to accommodate competing interests such as effective law enforcement and precise workable rules of evidence in criminal proceedings.[27] Accordingly, both the U.S. Supreme Court and this court have held that when a witness is unavailable for trial, hearsay evidence may be admitted when there has been "substantial compliance with the purposes behind the confrontation requirement. Those purposes are satisfied when the trier of fact has a reasonable basis for evaluating the truthfulness of the prior statement."[28]

¶ 37. In the present case, there has been substantial compliance with the purposes behind the confrontation requirement. The defendant has made no argument, and we can come up with none, to suggest that Park's memory or credibility is at issue in the present case or that cross-examination of Park at trial, had Park been present, would have included any questions pertaining to her memory, credibility, or bias against the defendant.

¶ 38. The facts underlying Park's testimony are not in dispute. The defendant does not dispute that Park traded in her Glastar boat for a rowboat. Neither

---

[25] *See Ohio v. Roberts,* 448 U.S. 56, 63–64 (1980) (quoting *Mattox v. United States,* 156 U.S. 237, 242–43 (1895)).

[26] *Roberts,* 448 U.S. at 64 (internal citations omitted).

[27] *Id.*

[28] *Bauer,* 109 Wis. 2d at 214 (citations omitted); *see also Roberts,* 448 U.S. at 64–65.

does the defendant dispute that Park dealt with Krehmeyer when trading in her boat and did not ever deal with him. More importantly, the defendant admitted at trial that he falsified Park's purchase agreement and that he paid the false amount listed on the agreement.[29] Finally, the defendant has offered no evidence, and has not even hinted at the possibility, that Park could be challenged on the basis of bias, credibility, or memory.

¶ 39. The only disputed issue at trial that involved Park's testimony in any way was whether Keith Shoeder knew that the defendant had falsified the purchase agreement with Park and whether Keith Shoeder gave the defendant permission to take the exchanged Glastar boat home. Park's testimony shed no light on either of these issues. Therefore, the defendant's inability to cross-examine Park with questions that go to memory, credibility, or bias does not present an unusual circumstance that would undermine the reliability of Park's testimony in the present case.

¶ 40. Wisconsin case law leaves open the possibility that the inability of a defendant to cross-examine a witness at a preliminary hearing on questions of memory, credibility, or bias could, under certain circumstances, constitute an unusual circumstance that would render admission of the preliminary hearing testimony

---

[29] In addition, the Glastar boat that Park traded in was found at the defendant's home.

a violation of the defendant's right to confrontation.[30] The case at hand, however, does not present such circumstances.

¶ 41. Accordingly, we conclude that there was no error, either evidentiary or constitutional, in admitting Park's preliminary hearing testimony at the defendant's trial.

## III

¶ 42. Second, the defendant argues that the circuit court erred when it excluded the prior inconsistent statement of a witness, Dan Krehmeyer. The defendant was attempting to use the prior inconsistent statement to impeach Krehmeyer.

¶ 43. Krehmeyer was the State's principal witness on the theft charges stemming from the alleged commission-splitting scheme. According to the State, the commission-splitting scheme began in 1999 and involved Krehmeyer's writing nine monthly checks to the defendant, totaling over $1,000, and representing the defendant's share of the commissions Krehmeyer received.

¶ 44. On cross-examination at trial, Krehmeyer testified that he had never given checks or money to the

---

[30] *See, e.g., Bauer,* 109 Wis. 2d at 221–22 ("Notwithstanding the fact that cross-examination during the preliminary examination is limited in form, if in substance the questioning deals with the witness's credibility, the purposes behind the confrontation right may be satisfied. . . . [D]efense counsel adequately cross-examined [the witness] 'on the very issues that are relevant at the time the witness is unavailable, including credibility.' "); *Nabbefeld,* 83 Wis. 2d at 526–27 ("Where unusual circumstances are apparent, the court may have reason to inquire into whether a meaningful confrontation was indeed afforded a defendant.").

defendant for help in closing sales at Shoeder's Marine prior to the alleged agreement to split commissions. He also testified that he did not recall ever doing so.

¶ 45. The State then called Detective Ron Lueneburg of the Rhinelander Police Department, who testified about the search warrant executed at the defendant's house. During cross-examination, the defendant asked Detective Lueneburg about statements Krehmeyer made to him during the police investigation. The question was based on a police report Detective Lueneburg had prepared that indicated Krehmeyer had written three checks to the defendant in 1997 and stated they were legitimate payments for the defendant's assistance in closing some sales. The State objected to the question on hearsay grounds, and the circuit court sustained the objection.

■

¶ 46. We agree with the court of appeals and both parties that the circuit court erred in refusing to allow the question. Krehmeyer's statement to the detective was admissible as a prior inconsistent statement under Wis. Stat. § 908.01(4)(a).[31]

■

¶ 47. The question then is whether the error is prejudicial so that a new trial on the theft charge is warranted. The test for harmless error was set forth by the U.S. Supreme Court in *Chapman v. California,* 386 U.S. 18, 24 (1967), *reh'g denied,* 386 U.S. 987 (1967), which stated that "before a federal constitutional error

___

[31] Wisconsin Stat. § 908.01(4)(a) states that: "A statement is not hearsay if . . . the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . [i]nconsistent with the declarant's testimony."

can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." An error is harmless if the beneficiary of the error proves "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained."[32] This court applies the *Chapman* test for constitutional and non-constitutional errors in interpreting Wis. Stat. § 805.18, the harmless error statute.[33]

¶ 48. The court has explained that in applying the *Chapman* harmless error test, the reviewing court should consider a variety of factors, including but not limited to the frequency of the error, the nature of the State's case, the nature of the defense, the importance of the erroneously included or excluded evidence to the prosecution's or defense's case, the presence or absence of evidence corroborating or contradicting the erroneously included or excluded evidence, whether erroneously admitted evidence merely duplicates untainted evidence, and the overall strength of the prosecution's case.[34]

¶ 49. The defendant argues that the circuit court's erroneous preclusion of the statements was not

---

[32] *Chapman v. California,* 386 U.S. 18, 24 (1967) (quoted with approval in *Neder v. United States,* 527 U.S. 1, 15 (1999)).

[33] This court continues to follow the *Chapman* test and rejects the notion that *Neder v. United States,* 527 U.S. 1 (1999), abandoned the *Chapman* harmless error test. *See State v. Vanmanivong,* 2003 WI 41, ¶ 41 n.10, 261 Wis. 2d 202, 661 N.W.2d 76; *State v. Carlson,* 2003 WI 40, ¶¶ 85–86, 261 Wis. 2d 97, 661 N.W.2d 51 (Sykes, J., dissenting); *State v. Harvey,* 2002 WI 93, 254 Wis. 2d 442, ¶ 48 n.14, 647 N.W.2d 189.

[34] *See, e.g., State v. Billings,* 110 Wis. 2d 661, 668–70, 329 N.W.2d 192 (1983); *State v. Drusch,* 139 Wis. 2d 312, 324 n.1, 407 N.W.2d 328 (Ct. App. 1987).

harmless, because the evidence would have cast doubt on whether the alleged 1999 agreement between the defendant and Krehmeyer to split commissions and defraud Shoeder's Marine actually existed.

¶ 50. We disagree with the defendant that the error was prejudicial. The record shows that even though the defense could not elicit Krehmeyer's inconsistent statement through Detective Lueneburg's testimony, the same evidence was effectively communicated to the jury by other means.

¶ 51. Krehmeyer initially testified that he had not written checks to the defendant before 1999 and did not remember telling the police that some checks written to the defendant prior to 1999 were for legitimate purposes. After the circuit court sustained the hearsay objection regarding the questioning of Detective Lueneburg, the defense called Krehmeyer to testify again and attempted to use the Detective's police report to refresh Krehmeyer's memory. During this second round of questions, Krehmeyer stated that his recollection was not refreshed by the document but admitted that if the pre-1999 checks existed then he did write them and that they would have been for legitimate purposes, as he had no reason to write the checks otherwise.

¶ 52. Krehmeyer's prior inconsistent statement was again presented to the jury when the defense summarized Krehmeyer's testimony, during closing arguments, as "I don't remember telling Mr. Lueneburg that I had these checks that I paid him and there was legitimate things back in '97."

¶ 53. Because the jury learned about Krehmeyer's prior inconsistent statement, we conclude that it is clear "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained."[35]

## IV

¶ 54. The defendant's third argument is that the jury instruction for the charge of feloniously falsifying corporate documents violated his right to a unanimous jury in the present case.

¶ 55. Wisconsin Stat. § 943.39(1) makes it a crime for an employee of a corporation to falsify a record, account, or other document belonging to that corporation "with intent to injure *or* defraud."[36] The statute reads, in pertinent part:

> 943.39 Fraudulent writings. Whoever, *with intent to injure or defraud,* does any of the following is guilty of a Class D felony:
>
> (1) Being a director, officer, manager, agent or employee of any corporation or limited liability company falsifies any record, account or other document belonging to that corporation or limited liability company by alteration, false entry or omission, or makes, circulates or publishes any written statement regarding the corporation or limited liability company which he or she knows is false . . . .[37]

---

[35] *Chapman,* 386 U.S. at 24.

[36] Wis. Stat. § 943.39(1) (emphasis added).

[37] *Id.* (emphasis added).

The statute was amended, effective February 1, 2003, to make a person convicted under this statute guilty of a Class H felony rather than a Class D felony.

¶ 56. The circuit court, following the pattern jury instructions, instructed the jury on both types of intent as follows:

> The third element [of the crime of falsifying corporate documents] requires that the defendant acted with intent to injure *or* defraud. Intent to injure means that the defendant intended to cause harm of any kind. Intent to defraud means that the defendant intended to obtain property that he was not entitled to receive.[38]

¶ 57. The defendant argues that the circuit court erred when it gave this instruction because it did not require that all members of the jury agree that the documents were falsified with the same criminal intent. According to the defendant, the choice of finding him guilty of falsifying documents with the intent to defraud or the intent to injure relieved the jury of its duty to reach a unanimous verdict and therefore violated the defendant's constitutional right.

¶ 58. The Wisconsin Constitution guarantees accuseds a right to a trial by jury.[39] That guarantee includes the right to a unanimous verdict with respect

---

[38] Wis JI—Criminal § 1485 (Fraudulent Writings: Falsifying a Corporate Record - § 943.39(1)) (2001) (emphasis added). The jury instruction provides, in relevant part:

> 3. The defendant acted with intent to (injure)(defraud).
>
> ["Intent to injure" means that the defendant intended to cause harm of any kind.]
>
> ["Intent to defraud" means that the defendant intended to obtain property that (he)(she) was not entitled to receive.]

[39] Article I, Section 5 of the Wisconsin Constitution provides as follows:

> SECTION 5. The right of trial by jury shall remain inviolate, and shall extend to all cases at law without regard to the amount in

to the ultimate issue of guilt or innocence.[40] "The principal justification for the unanimity requirement is that it ensures that each juror is convinced beyond a reasonable doubt that the prosecution has proved each essential element of the offense."[41]

■

¶ 59. The proper analysis for determining whether a defendant's right to a unanimous verdict has been violated by a jury instruction involves multiple steps. First, a court must look to the statute defining the crime and ask a threshold question: Does the statute create multiple offenses or a single offense with multiple modes of commission?[42] To resolve this question, a court is to examine four different factors: the language of the statute, the legislative history and context of the statute, the nature of the proscribed conduct, and the appropriateness of multiple punishments for the conduct.[43] The point is to determine the legislative intent in drafting the statute.[44]

---

controversy; but a jury trial may be waived by the parties in all cases in the manner prescribed by law. Provided, however, that the legislature may, from time to time, by statute provide that a valid verdict, in civil cases, may be based on the votes of a specified number of the jury, not less than five-sixths thereof.

[40] *State v. Johnson,* 2001 WI 52, ¶ 11, 243 Wis. 2d 365, 627 N.W.2d 455.

[41] *State v. Lomagro,* 113 Wis. 2d 582, 591, 335 N.W.2d 583 (1983).

[42] *Manson v. State,* 101 Wis. 2d 413, 422, 304 N.W.2d 729 (1981) (cited with approval in *State v. Derango,* 2000 WI 89, ¶ 14, 236 Wis. 2d 721, 613 N.W.2d 833).

[43] *Id.* (cited with approval in *State v. Derango,* 236 Wis. 2d 721, ¶ 15).

[44] *Id.* (cited with approval in *State v. Derango,* 236 Wis. 2d 721, ¶ 15).

¶ 60. When a court determines that the legislature intended to enact a statute creating multiple offenses, it is clear that juror unanimity as to each offense is required to convict an accused of each offense.[45] On the other hand, when a court determines that the legislature intended to enact a statute creating one crime with alternate modes of commission, the court must make a second inquiry to determine whether an instruction allowing a conviction based upon a finding as to either mode, in the alternative, violates an accused's constitutional right to unanimity.[46]

¶ 61. This court has employed two different tests when addressing the constitutionality of a conviction based upon a jury instruction concerning a statute that creates a single offense with alternate modes of commission. For many years we relied upon the Fifth Circuit's "conceptually distinct" test set forth in *United States v. Gipson,* 553 F.2d 453 (5th Cir. 1977).[47] Under the conceptually distinct test, unanimity as to the multiple modes of commission is not required unless the alternate modes are conceptually distinct.[48]

¶ 62. Then, in *Derango,* 236 Wis. 2d 721, we explained that the United States Supreme Court had rejected the *Gipson* test in *Schad v. Arizona,* 501 U.S. 624 (1991) and replaced it with a new test that focuses on an evaluation of the fundamental fairness and

---

[45] *Id.* at 419.

[46] *Id.*

[47] *See Derango,* 236 Wis. 2d 721, ¶ 22 (listing Wisconsin cases relying upon *United States v. Gipson,* 553 F.2d 453 (5th Cir. 1977)).

[48] *Derango,* 236 Wis. 2d 721, ¶ 22.

rationality of the legislature's choice to provide for a single offense with alternate modes of commission.[49] In *Derango* and cases subsequent, this court has employed the fundamental fairness and rationality test.[50]

¶ 63. In the present case, the defendant presents no argument that Wis. Stat. § 943.39(1) creates two distinct offenses. Moreover, the defendant presents no argument that § 943.39(1) defines one crime with multiple modes of commission that are either conceptually distinct or represent a fundamentally unfair or irrational legislative choice.[51] Rather, the defendant asserts in

---

[49] *Schad v. Arizona*, 501 U.S. 624, 635 (1991).

[50] *See, e.g., Johnson*, 243 Wis. 2d 365, ¶ 17 (applying the test in *Schad* to address a juror unanimity challenge).

[51] The court of appeals is wrong to assert that the Committee Comments to the jury instructions in this case provide persuasive authority on the constitutionality of instructing the jury on alternative modes of commission. *State v. Norman*, No. 01–3303–CR, unpublished slip op. ¶ 15 (Wis. Ct. App. Aug. 20, 2002).

The Wisconsin Criminal Jury Instruction Committee comment on this portion of the instruction explains, "[T]he Committee concluded that it would be permissible to instruct on both types of intent and that jury agreement on the intent involved would not be required. The Wisconsin Supreme Court has reached that conclusion with offenses under § 948.07, Child enticement. *State v. Derango*, 2000 WI 89, 236 Wis. 2d 721, 613 N.W.2d 833."

As previously stated, the first step in assessing whether a jury instruction violates a defendant's right to a unanimous verdict is to discern the legislative intent in adopting the statute on which the jury is being instructed. Consequently, the fact that this court held that it was permissible to instruct a jury on two alternative modes of commission under Wis. Stat. § 948.07 does not necessarily mean that the same is true under Wis. Stat. § 943.39(1), a completely unrelated statute. Moreover, an in-

conclusory fashion that giving the jury a choice automatically violates his right to a unanimous jury.[52]

¶ 64. An accused's right to a unanimous verdict is not violated every time a judge instructs a jury on a statute that presents multiple modes of commission and does not select one among the many modes of commission. An argument that an instruction leads to a constitutionally infirm verdict must address the legislature's intent in enacting the statute and, where multiple modes of commission are found, whether the choice provided is constitutionally unacceptable. Here, the defendant has made no such arguments. We agree with the State that the defendant is not entitled to the court's consideration of this issue because he has failed to develop his assertion. We therefore conclude that the circuit court did not err in instructing the jury.

V

¶ 65. Finally, the defendant argues that the evidence was not sufficient for a jury to conclude, beyond

---

struction must be examined for fairness and rationality. This court has not determined whether an instruction may be fair and rational in one fact situation but may not be fair and rational in a different fact situation. *See Manson,* 101 Wis. 2d at 438 (Abrahamson, J., concurring) ("Conceptual groupings, while dependent to an extent on the statutory language, are also dependent upon the facts in evidence.").

[52] The defendant cites to a single case, *State v. Seymour,* 183 Wis. 2d 683, 515 N.W.2d 874 (1994), to support his argument. *Seymour,* however, is inapposite. It held that Wis. Stat. § 943.20(1)(b) should be read to include distinct offenses of theft by an employee based upon the court's assessment of the legislative intent in enacting § 943.20. The same legislative intent cannot automatically be attributed to Wis. Stat. § 943.39(1), a statute addressing a different offense.

a reasonable doubt, that he was guilty of the crimes of which he was convicted. Specifically, the defendant asserts that the evidence does not support a finding that he had the requisite intent under Wis. Stat. § 943.39(1). According to the defendant, Keith Shoeder, the owner of the business, consented to the defendant's falsifying the purchase agreements and taking equipment home. In addition, the defendant asserts that if he had wanted to defraud the business, he would not have added items to receipts that would later be reviewed.

¶ 66. A defendant challenging the sufficiency of the evidence used to convict him bears a heavy burden. A criminal conviction will not be reversed unless the evidence, viewed most favorably to the State and the conviction, is so insufficient in probative value and force that it can be said as a matter of law that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt.[53]

¶ 67. The defendant does not meet his heavy burden. There is ample evidence to support a finding of guilt beyond a reasonable doubt in the case at hand. First, while it is true, as the defendant asserts, that the defendant testified that Shoeder knew of and approved of the defendant's actions, Shoeder himself testified to the contrary. Second, Shoeder testified that had the defendant not falsified the documents, it would have been much easier to discover his actions.

---

[53] *State v. Schwebke*, 2002 WI 55, ¶ 40, 253 Wis. 2d 1, 644 N.W.2d 666.

¶ 68. The jury is the ultimate arbiter of a witness's credibility.[54] Nothing about either Shoeder's or the defendant's testimony or other evidence is so insufficient in probative value and force that it can be said as a matter of law that no trier of fact, acting reasonably, could have found the defendant guilty beyond a reasonable doubt.

## VI

¶ 69. For the foregoing reasons, the decision of the court of appeals upholding the judgment of convictions against the defendant is affirmed.

*By the Court.*—The decision of the court of appeals is affirmed.

---

[54] *State v. Webster,* 196 Wis. 2d 308, 320, 538 N.W.2d 810 (Ct. App. 1995).