In the

# United States Court of Appeals

### For the Seventh Circuit

No. 08-2825

ELLIOT D. RAY,

*Petitioner-Appellant,*

*v.*

ANA BOATWRIGHT,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 1:07-cv-00190-WCG—**William C. Griesbach,** *Judge.*

ARGUED NOVEMBER 5, 2009—DECIDED JANUARY 21, 2010

Before BAUER, MANION and WILLIAMS, *Circuit Judges*.

BAUER, *Circuit Judge*. Elliot Ray appeals from the district court's denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2254. Because it was plain error for the state court to admit the co-actors' statements through the police detective's testimony at trial, violating Ray's right of confrontation, we reverse and remand.

## I. BACKGROUND

Ray was one of several gunmen charged in Wisconsin state court for a retaliatory shooting in which Rita Martinez, an eleven-year-old girl, was killed, and two people were injured on 29th Street in Milwaukee, Wisconsin. Ray claims that on the night of the shooting, he changed his mind about accompanying his friends to 29th Street, told his friends that he was not going with them, and returned to his friend's house on 33rd Street. Ray maintains that he learned that Martinez had been shot near 29th Street from a television news report.

At trial, the State called Detective Daniel Phillips to testify about the homicide investigation and his interview with Ray at the police station. The detective testified about Ray's signed statement that was written toward the end of Ray's interview, where Ray talked about the night of shootings at issue, as well as the events that transpired the night before the shootings. Ray's App. at 642. In testifying, the detective primarily read from Ray's statement, including the portion where he told Ray that two of his co-actors' had made statements to implicate Ray in the shootings. We note that the detective testifying to the statements made by others (other than the defendant) is inadmissible hearsay. The detective testified as follows:

> Ray states that he too then began walking from 33rd Street to 29th Street to go shoot along with the rest of them, but Ray states when he got to North Avenue he thought "fuck it" and turned around and went back to [his friend's] house.

Ray was then confronted with numerous statements made by co-actors that they were present shooting on 29th Street and so was Ray.

Ray then stated "those stupid niggers shouldn't be talking and they can't talk for me."

*When confronted with statements by [Miriam Myles] that Ray was shooting a nine-millimeter on 29th Street [and] in a statement by Sylvester Townsend . . . that Ray had a .45-caliber pistol*[,] Ray then said "tell me which gun killed the girl and I'll tell you everything."

Ray's App. at 653. (Emphasis added.)

Ray's attorney did not object to the detective's testimony regarding the above-referenced statements. Neither Miriam Myles nor Sylvester Townsend testified at trial.

A jury returned guilty verdicts for one count of first-degree reckless homicide, party to a crime, and two counts of first-degree recklessly endangering safety. Ray's App. at 38. He was also convicted of being a felon in possession of a firearm. *Id.*

On direct appeal, Ray raised five issues, including a claim that his confrontation clause rights were violated when the detective was allowed to testify regarding statements made by Ray's co-actors, when those co-actors were not witnesses at trial. The state appellate court ignored this issue and solely focused on whether there was a hearsay violation, despite the detective using the phrase, "Ray was then confronted" in his testimony. The state appellate court concluded that the detective's references to the co-actors's statements were not

hearsay because they were not offered to prove "the truth of the matter" contained in the statements but rather "to show Ray's reaction to his co-actors' statements placing him at the scene, shooting a gun—a reaction implicating him in the revenge-seeking conspiracy." Ray's App. at 40-42. The state supreme court denied Ray's petition for review.

Ray then sought post-conviction relief in state court under Wis. Stat. § 974.06. He was denied relief. Ray's App. at 95.

Ray filed two separate pro se petitions for writ of habeas corpus in the federal district court. The district court denied both of Ray's petitions pursuant to Rule 4 of the Rules Governing Section 2254 Cases, finding that he set forth no cognizable constitutional or federal law claims. Ray's App. at 51-58, 94-100. Thereafter, the district court granted Ray's request for a certificate of appealability to address whether the trial court's admission of the statements by non-testifying co-actors through the testimony of the detective ran afoul of the confrontation clause.

## II. DISCUSSION

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), an application for a writ of habeas corpus may not be granted unless adjudication of the claim in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C.

§ 2254(d)(1). "[S]tate-court judgments must be upheld unless, after the closest examination of the state-court judgment, a federal court is firmly convinced that a federal constitutional right has been violated." *Williams v. Taylor*, 529 U.S. 362, 388 (2000).

The Government seeks to frame the issue in this case as one involving the hearsay rule; it is not. While there is a hearsay violation as noted above, the issue involves the violation of the Sixth Amendment of the Constitution which says that: "The accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." The Supreme Court has held that the guarantee, which is extended against the states by the Fourteenth Amendment, includes the right to cross-examine witnesses. *See Pointer v. Texas*, 380 U.S. 400, 404 (1965). And this fundamental constitutional right is quite properly an almost total ban on the introduction of accusations against the accused by persons not present for cross-examination.

### A.  Whether There Was A Confrontation Clause Issue

The first issue we must address is whether the detective's testimony concerning the statements made by the co-actors violated Ray's right of confrontation. The government contends that the co-actors' statements were used "not as substantive evidence of Ray's guilt, but instead to 'give the context of' Ray's reaction to those statements." Appellee's Brief at 22. Because the statements were not hearsay, the government maintains that they do not run afoul of the confrontation clause. *Id.* at 23. The government likens this case to both *Tennessee*

*v. Street*, 471 U.S. 409, 417 (1985) and *Lee v. McCaughtry*, 892 F.3d 1318, 1325 (7th Cir. 1990). In *Street*, the Supreme Court held that there was no confrontation clause violation when the State introduced the co-actor's confession, because it was introduced for the non-hearsay purpose of rebutting the defendant's testimony that his own confession was a coerced "copy" of the co-actor's statement. 471 U.S. at 417. In *Lee*, we held that there was no confrontation clause violation in admitting into evidence a tape recording that included the state's attorney's narration of the accomplice's accusation in the recorded interview with the defendant, because it was used to place into context for the jury the metamorphosis of the defendant's accounts of events, i.e., that the defendant changed his story after hearing the accomplice's accusation. 892 F.3d at 1325.

The government maintains that the state court's conclusion that the co-actors' statements were introduced to give context to Ray's reaction to them (i.e., a guilty reaction), not to show their underlying truth, is a reasonable conclusion and a reasonable application of federal law. *Id.* at 24.

We disagree. The confrontation clause has been invoked to prevent, even in a joint trial, the admission of a confession by a co-defendant that implicates the other accused, even if the trial judge provides a limiting instruction. *See Bruton v. United States*, 391 U.S. 123, 127-28 (1968). While the method of presentation of the accusations in this case shows lively imagination on the part of the prosecution, it nevertheless runs afoul of the United

States Constitution. Here, the evidence presented by the prosecution delivered to the jury statements by named co-actors, not available for cross-examination, accusing Ray of the very crimes with which he stood charged. However cleverly presented, the evidence was a clear violation of Ray's constitutional right of confrontation. While the government asserts that "a number of witnesses placed Ray among the group of people involved in the shooting" (Appellee's Brief at 5-6), none of these witnesses could place Ray at the scene of the shootings, with a weapon in his hand. To accept the government's position that the statements were offered only to create the setting for Ray's response, and therefore admissible, would set the stage to eliminate, in most cases, the con-frontation right "enjoyed by the accused."

*Street* is factually distinguishable because there, the co-actors' confession was introduced in rebuttal to refute the defendant's claim of coercion, where here, the detective testified to the co-actors' statements during the State's case-in-chief. The court in *Street* also instructed the jury that the co-actor's statement was to "be considered by you for rebutable [sic] purposes only, and you are not to consider the truthfulness of the statement in any way whatsoever." *Id.* at 512. The court in this case issued no limiting instruction.

*Lee* is also distinguishable because we do not find that Ray changed his version of events after hearing the accusa-tions of the co-actors. Further, the trial court in *Lee* also provided a limiting instruction whereas none was pro-vided here.

We find that the detective testifying to the co-actors' statements proved far more than any reaction that Ray had during his interview. Ray did not have the opportunity to cross-examine these co-actors at trial. Accordingly, these statements violated Ray's right of confrontation.

### B. Whether These Statements Were Admissible Under *Roberts* And *Lilly*

Because Ray's conviction was finalized before *Crawford v. Washington*, 541 U.S. 36 (2004), was decided, Ray's confrontation clause claim should be analyzed "according to *Roberts* and *Lilly*, the clearly established Supreme Court precedent at the time of the state court decisions." *Bintz v. Bertrand*, 403 F.3d 859, 867 (7th Cir. 2005). Under these cases, the veracity of statements from non-testifying witnesses is sufficiently dependable to allow the untested admission of such statements against an accused at trial when (1) "the evidence falls within a firmly rooted hearsay exception" or (2) it contains "particularized guarantees of trustworthiness" such that adversarial testing would be expected to add little, if anything, to the statements' reliability. *Ohio v. Roberts*, 448 U.S. 56, 65-66 (1980); *Lilly v. Virginia*, 527 U.S. 116, 124-25 (1999).

The government does not argue, nor do we find, that these statements fall within a hearsay exception.

Additionally, the government does not argue that these statements contain particularized guarantees of trustworthiness. As this Court interprets the reasoning of the plurality in *Lilly*, these guarantees of trustworthiness

"must be inherent in the circumstances of the testimony itself; the fact that other evidence corroborates the testimony in question does not suffice." *United States v. Castelan*, 219 F.3d 690, 695 (7th Cir. 2000). There is a presumption of unreliability that attaches to a co-defendant's confession, see *Lee v. Illinois*, 476 U.S. 530, 543 (1986), "[i]t is highly unlikely that the presumptive unreliability that attaches to accomplices' confessions that shift or spread blame can be effectively rebutted when . . . the government is involved in the statements' production, and when the statements describe past events and have not been subjected to adversarial testing." *Lilly*, 527 U.S. at 137.

Here, the co-actor's statements neither fall "within a firmly rooted hearsay exception", nor do they contain "particularized guarantees of trustworthiness." Therefore, these statements were inadmissible. *See Ohio v. Roberts*, 448 U.S. at 65-66; *Lilly*, 527 U.S. at 124-25.

### C. Whether It Was Plain Error To Admit These Statements

Ray concedes that no objection was made when the detective testified to the co-actors' statements and that, as a consequence, our review is limited to plain error. *See* Fed. R. Crim. P. 52(b); *United States v. Hodges*, 315 F.3d 794, 800 (7th Cir. 2003). Under the plain error standard, "we must decide (1) whether there was an error at all, (2) whether it was plain, (3) whether it affected the defendant's substantial rights, and (4) whether (if the first

three factors are present) it seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Hawk*, 434 F.3d 959, 962 (7th Cir. 2006). The focus of the prejudice inquiry in determining whether the confrontation right has been violated must be on the particular witness, not on the outcome of the entire trial. *Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986). A new trial is warranted if the error had a substantial and injurious effect or influence on determining the jury verdict. *Bintz*, 403 F.3d at 869.

Here, the error in admitting statements by non-testifying co-actors was plain. Ray's substantial rights were affected because he was not able to cross-examine the only witnesses who directly implicated him to being at the scene of the shooting with a weapon in his hand, and who directly refuted Ray's claim that he had withdrawn from the conspiracy at issue. We find this confrontation clause violation seriously affected the fairness of the judicial proceedings and reverse the district court's opinion.

### D.  Whether Ray's Petition Was Timely

The government alternatively argues that Ray's habeas petition should be barred because it was untimely. Under the rules governing AEDPA, a petitioner has one year in which to file a petition for writ of habeas corpus, to begin running "on the date of which the judgment became final by the conclusion of direct review or expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). The one-year period is tolled

during a properly filed post-conviction petition in state court. *See* 28 U.S.C. § 2244(d)(2). Accordingly, Ray had until September 9, 2004 in which to file his petition. The government maintains that Ray failed to provide documentation that he had originally filed his state post-conviction motion in a timely manner, and discredits Ray's assertion that the Oklahoma prison in which he was housed misplaced the timely-filed motion.

There is no evidence in the record to support the government's assertions. However, this is largely due to the fact that the district court dismissed Ray's petition on the merits before giving the government an opportunity to answer the petition and develop the record. The record currently reflects that Ray served a copy of his pro se post-conviction petition to prison officials on April 27, 2004. Ray's App. at 32, 36. Correspondence between Ray and prison officials alternatively indicate that Ray filed his motion on April 29, 2004. Ray's App. at 32, 34-35, 37. Despite the disparity in the date, these documents provide support for Ray's assertion that he filed his post-conviction petition in a timely manner. However, the government has not yet had a chance to challenge whether the documents Ray placed into the record are authentic; whether the state court petition was ever received by prison officials; whether the papers Ray filed were sufficient under state law to petition for post-conviction relief; or whether the individual to whom Ray allegedly gave his petition was a proper prison authority. Accordingly, we remand this case to the district court so that the government may have an opportunity to develop the record on this issue. If, after

the record is fully developed, Ray's petition is determined to be timely, this Court directs the district court to grant the petition for writ of habeas corpus unless the State chooses to retry Ray within 120 days.

### III. CONCLUSION

For the reasons stated above, we REVERSE the district court and REMAND the case for further proceedings not inconsistent with this opinion.