NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 5, 2010[*]
Decided May 12, 2010

**Before**

FRANK H. EASTERBROOK, *Chief Judge*

JOHN L. COFFEY, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 09-4006

| | |
|---|---|
| WILLIAM JAMES MERENESS,<br>  *Petitioner-Appellant*, | Appeal from the United States District Court<br>for the Eastern District of Wisconsin. |
| *v.* | No. 09-C-00076 |
| JIM SCHWOCHERT,<br>  *Respondent-Appellee*. | William E. Callahan, Jr.,<br>*Magistrate Judge*. |

**O R D E R**

William Mereness, a Wisconsin inmate, was convicted of first-degree intentional homicide and sentenced to life in prison without possibility of release. After the state courts affirmed his conviction and denied his motion for post-conviction relief, Mereness filed a petition for a writ of habeas corpus. *See* 28 U.S.C. § 2254. A magistrate judge, presiding by consent, denied the petition but granted a certificate of appealability to determine whether a violation of Mereness's Sixth Amendment right to confrontation prejudiced him at trial. We

---

[*]After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

conclude that the state courts reasonably applied Supreme Court precedent in concluding that the Confrontation Clause violation was harmless, and therefore affirm the judgment.

Jennifer Mereness was bludgeoned to death at her Janesville, Wisconsin, home on November 22, 2002. Her estranged husband, William Mereness, became the prime suspect and the evidence against him was vastly circumstantial. Jennifer, a high school teacher, had left school that Friday around 11:00 a.m. due to illness; construction workers in her neighborhood testified that they saw a woman arrive at Jennifer's house around 11:30 a.m. and then heard screams a few minutes later. Those workers then followed a man who fled the house on foot but could not catch up to him.

When the police questioned Mereness, he attempted to explain his whereabouts on November 22. Mereness was a district manager for Wal-Mart and did not keep regular office hours. He told the police officers that on Friday, November 22, he drove his teenage son to school and returned home to prepare for a telephone conference scheduled for that morning with his supervisor. At the last minute, she cancelled the conference call, and thus, he got an early start on a weekend trip to his cabin in Minocqua, Wisconsin. He claimed to have left Janesville around 10:00 a.m. To support this claim, he produced a receipt for a candy bar he purchased in Minocqua at 3:34 p.m. and asserted that it takes around 5 hours to drive from Janesville to Minocqua.

However, evidence presented at his trial refuted Mereness's statements. His boss testified that she had cancelled their telephone conference days earlier and had been led to believe that Mereness would be inspecting the Wal-Mart in West Allis, Wisconsin, that day. A police officer testified as to the time it took to drive from Mereness's home to the Wal-Mart in Minocqua, where Mereness purchased the candy bar, and stated that it took him only 3½ hours. Furthermore, the state used Mereness's cell phone records to establish that he was in Janesville in late morning on the day of the murder. In addition, Mereness's brother, who had permission from Mereness to spend time alone with his son at the cabin that weekend, testified that Mereness told him on Thursday night that he would be joining them at the cabin on Friday. Mereness also asked his brother to purchase groceries with cash at a Minocqua grocery store between 4:00 and 5:00 p.m. on the day of the murder and to get a receipt, but then at noon, he told his brother that he did not need the groceries.

The state also presented evidence that shortly after the murder Mereness replaced a jacket matching that worn by the man seen leaving Jennifer's house. Mereness had paid for the new jacket with a personal check, but afterward he returned to the store and insisted on getting the check back and paying with cash. Additionally, an expert witness testified that glass fragments recovered from Mereness's car matched the glass in a broken basement window of Jennifer's house.

But the most damning evidence presented at the trial was testimony concerning the statements Mereness made to his parents. A week after Jennifer's death, Mereness left his parents' house in Appleton, Wisconsin, and attempted to commit suicide by driving his car into a concrete wall. An Appleton detective, Peter Helein, who later interviewed Mereness's mother testified that she had described Mereness as depressed and further that Mereness had confided to her two days before the wreck that he feared going to prison for Jennifer's murder. The detective continued that on the day of the wreck, Mereness's parents found him in a bathtub at their home with a roll of plastic wrap and a carving knife. According to the detective, Mereness had said he wanted to die, and when his mother asked if he killed Jennifer, he replied, "Yes, I'm really sorry." Mereness's mother had died before trial, so the judge allowed the prosecution to introduce her hearsay statements through the detective. Mereness sought to paint his mother as unreliable by introducing evidence that she had fought a life-long battle with mental illness that required constant medication and intermittent hospitalization.

But Mereness's mother was not alone in the bathroom when he confessed. His father was also present, and at trial he testified that his wife had asked Mereness, "Did you do it?" and he replied, "Yeah, I did it." His father said that he then left the bathroom because he hoped to insulate himself from the conversation so that he would be shielded from testifying against his son. After leaving the bathroom, he stated that the three of them discussed options in the kitchen. Mereness's father testified that he shared with his son the three paths he might choose from: confess to the police, go to trial, or kill himself. It was shortly after this discussion that Mereness drove his car into the concrete wall.

Before trial Mereness moved to exclude his mother's statements on the grounds that they were inadmissible hearsay and that their use would violate his Sixth Amendment right to confrontation. The trial court, relying on *Ohio v. Roberts*, 448 U.S. 56, 65 (1980), and *State v. Weed*, 666 N.W.2d 485, 494-95 (Wis. 2003), concluded that the statements were admissible under Wisconsin's hearsay rules and sufficiently reliable to satisfy the Confrontation Clause. Mereness renewed his constitutional claim in a posttrial motion, *see* WIS. STAT. § 974.02, and by then the Supreme Court had decided *Crawford v. Washington*, 541 U.S. 36, 59 (2004), which holds that testimonial hearsay cannot be admitted at a criminal trial unless the declarant is unavailable and the defendant had an opportunity to cross-examine. The trial court agreed with Mereness that under *Crawford* the statements should not have been admitted but nevertheless concluded that the error was harmless because the state presented enough credible evidence beyond a reasonable doubt to sustain the conviction. The Wisconsin Court of Appeals, after reviewing this ruling as well as Mereness's direct appeal, endorsed the trial judge's analysis noting that the officer's admitted testimony merely duplicated the untainted evidence offered by Mereness's father. The Supreme Court of Wisconsin declined review.

In his § 2254 petition Mereness argued that the *Crawford* error was not harmless because the jury's knowledge that he confessed to his mother would necessarily have had a substantial and injurious effect on the deliberations. Mereness repeats that argument, but our role, like that of the district court, is limited to ensuring that the state courts did not unreasonably apply clearly established federal law in rejecting the *Crawford* claim. *See* 28 U.S.C. § 2254(d)(1); *Ray v. Boatwright*, 592 F.3d 793, 796 (7th Cir. 2010). The parties agree that the admission of the detective's hearsay account of the exchange between Mereness and his mother violated the Confrontation Clause, *see Crawford*, 541 U.S. at 59; *United States v. Turner*, 591 F.3d 928, 932 (7th Cir. 2010), but confrontation errors are subject to harmless-error analysis, *Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986); *United States v. Ghilarducci*, 480 F.3d 542, 549 (7th Cir. 2007). And when a state court has concluded that the constitutional error was harmless, the first, and perhaps only, question in the § 2254 proceeding is whether the state court reasonably applied *Chapman v. California*, 386 U.S. 18, 24 (1967), in making that determination. *Mitchell v. Esparza*, 540 U.S. 12, 18 (2003); *Johnson v. Acevedo*, 572 F.3d 398, 404 (7th Cir. 2009). If the state court reasonably applied the *Chapman* standard, "then the federal case is over and no collateral relief issues." *Johnson*, 572 F.3d at 404.

Here, the state appellate court adopted the trial judge's analysis of Mereness's posttrial motion and reasoned that the *Crawford* error should be deemed harmless if it was clear beyond a reasonable doubt that the error did not contribute to the verdict. The court, citing *State v. Norman*, 664 N.W.2d 97, 108-09 (Wis. 2003), listed relevant factors to consider including the frequency of the error, whether the erroneously admitted evidence was corroborated or duplicated by other untainted evidence, and the overall strength of the state's case. The state court's reliance on these factors is consistent with *Chapman* and *Van Arsdall*, and although a state court need not cite the relevant Supreme Court cases to rule consistently with those standards, *see Early v. Packer*, 537 U.S. 3, 8 (2002); *Johnson v. Pollard*, 559 F.3d 746, 752 n.6 (7th Cir. 2009), here the state court acknowledged that authority by citing state opinions that explicitly apply *Chapman* and *Van Arsdale*. *See Weed*, 666 N.W.2d at 488; *Norman*, 664 N.W.2d at 108-09.

The state court's application of that precedent was likewise reasonable. Even without Mereness's confession to his parents, the state marshaled significant evidence pointing to Mereness as the perpetrator, including the cell phone records that put Mereness in Janesville at the time of her death, glass fragments from the basement window that were found in his car, his strange replacement of a jacket matching the killer's, and his discredited account of his whereabouts at the time of the murder and after. Moreover, the statements admitted from his mother were largely duplicated with the admission of his father's account of the same conversation. That his father tried to avoid hearing that statement, and then shortly after advised his son that he could confess, go to trial, or kill

himself, makes it clear that Mereness's admission that he "did it" was, as the state court found, a confession to the murder. We agree that although the detective's account of his mother's statement was erroneously admitted, the state court's conclusion that the error was harmless was a reasonable application of *Chapman* and *Van Arsdale*.

AFFIRMED.