# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2012AP2185-CR |
| COMPLETE TITLE: | State of Wisconsin, |
| | Plaintiff-Respondent-Petitioner, |
| | v. |
| | James R. Hunt, |
| | Defendant-Appellant. |

---

REVIEW OF A DECISION OF THE COURT OF APPEALS
Reported at 349 Wis. 2d 789, 837 N.W.2d 178
(Ct. App. 2013 – Unpublished)

---

| | |
|---|---|
| OPINION FILED: | August 1, 2014 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | March 19, 2014 |

---

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Jefferson |
| JUDGE: | Randy R. Koschnick |

---

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | |
| DISSENTED: | BRADLEY, J., ABRAHAMSON, C.J., PROSSER, J., dissent. (Opinion filed.) |
| NOT PARTICIPATING: | |

---

ATTORNEYS:

For the plaintiff-respondent-petitioner, the cause was argued by *Eileen W. Pray*, assistant attorney general, with whom on the briefs was *J.B. Van Hollen*, attorney general.

For the defendant-appellant, there was a brief by *Shelley M. Fite*, assistant state public defender, and oral argument by *Shelley M. Fite*.

2014 WI 102

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No.   2012AP2185-CR
(L.C. No.  2010CF320)

STATE OF WISCONSIN                    :        IN SUPREME COURT


**State of Wisconsin,**

        **Plaintiff-Respondent-Petitioner,**

    **v.**

**James R. Hunt,**

        **Defendant-Appellant.**

**FILED**

**AUG 1, 2014**

Diane M. Fremgen
Clerk of Supreme Court


REVIEW of a decision of the Court of Appeals.  *Reversed.*


¶1   MICHAEL J. GABLEMAN, J.   We review an unpublished, per curiam decision of the court of appeals[1] reversing the Jefferson County Circuit Court's judgment of conviction against the defendant, James R. Hunt.[2]   At trial, a jury found Hunt guilty of one count of causing a child under 13 to view or

_____

[1] State v. Hunt, No. 2012AP2185-CR, unpublished slip op. (Wis. Ct. App. July 18, 2013).

[2] Judge Randy R. Koschnick presided.

listen to sexual activity in violation of Wis. Stat. § 948.055 (2009-10).[3]

¶2 Two issues are presented for our consideration: 1) whether the circuit court erred in excluding the testimony of Hunt's friend, Matt Venske, that he never sent Hunt a video of a man and woman engaging in sexual intercourse, and if so, whether the error was harmless; and 2) whether Hunt's trial counsel provided ineffective assistance.

¶3 Because Venske's testimony was relevant to Hunt's theory of defense and corroborated his version of events, we hold that the circuit court erred in excluding the testimony. However, we conclude that the State met its burden of proving that it is "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error," State v. Harvey, 2002 WI 93, ¶49, 254 Wis. 2d 442, 647 N.W.2d 189 (quoting Neder v. United States, 527 U.S. 1, 18 (1999)), and thus, the error was harmless. We further determine that Hunt's ineffective assistance of counsel arguments fail under the two-part inquiry of Strickland v. Washington, 466 U.S. 668, 687 (1984). We conclude that, under the totality of the circumstances, Hunt received a fair trial, and our confidence in the judgment is not undermined. Accordingly, we reverse the decision of the court of appeals and reinstate the circuit

---

[3] All subsequent references to the Wisconsin Statutes are to the 2009-10 version unless otherwise indicated.

2

court's judgment of conviction and affirm its denial of Hunt's post-conviction motion.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

¶4    On November 11, 2010, James R. Hunt was charged with one count of sexual assault of a child under 13 in violation of Wis. Stat. § 948.02(1), and one count of causing a child under 13 to view or listen to sexual activity in violation of Wis. Stat. § 948.055(1) and (2)(a).    The complaining witness was Hunt's adopted daughter, A.H.  A.H. alleged that Hunt had placed her hand on his penis when she was six years old, and that when she was twelve, he had shown her three inappropriate images on his cell phone.  The first image was a cartoon depiction of a woman in a dress bending over.  The second image was a picture of a woman undressed from the waist up posing over a deer head and holding the antlers.  The third image was a video of a man and a woman engaged in sexual intercourse.

¶5    Hunt pled not guilty to both charges, and the case was tried in the Jefferson County Circuit Court.  During the preliminary hearing, A.H. testified that when Hunt had shown her the graphic images, he told her "this is the stuff that Matt sends me," referring to Hunt's friend, Matt Venske, who would later testify at trial for the defense.  This testimony was supported by A.H.'s account of events to Police Officer Terrance Nachtigal of the Fort Atkinson Police Department during his

initial investigation of the incident, as recorded in his police report.[4]

¶6  Prior to trial, the court ruled the first two images described above did not constitute "sexually explicit conduct" under Wis. Stat. § 948.055(1).[5]  However, the court determined that the video of the man and woman engaged in sexual intercourse could satisfy the statutory requirements.  Hunt's counsel filed a pretrial motion in limine arguing for exclusion of testimony regarding any images other than the video of sexual intercourse, citing Wis. Stat. § 906.08(2),[6] but did not mention

---

[4] Officer Nachtigal's police report, which recounted his initial interview with A.H. on October 11, 2010, was admitted into evidence as Def. Ex. No. 2.

[5] "Sexually explicit conduct" is defined as actual or simulated:

> (a) Sexual intercourse, meaning vulvar penetration as well as cunnilingus, fellatio or anal intercourse between persons or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal opening either by a person or upon the person's instruction. The emission of semen is not required;
>
> (b) Bestiality;
>
> (c) Masturbation;
>
> (d) Sexual sadism or sexual masochistic abuse including, but not limited to, flagellation, torture or bondage; or
>
> (e) Lewd exhibition of intimate parts.

Wis. Stat. § 948.01(7).

[6] Wis. Stat. § 906.08(2) provides:

4

the motion during the final pretrial motion hearing. Nevertheless, Hunt's counsel objected at trial to statements regarding the two other images described by A.H. and also moved for a mistrial on that basis on two occasions. The circuit court ruled that evidence concerning these two images was relevant and admissible, explaining:

> Well, these two images are not sexually explicit conduct under the statute.
>
> They are, however, inappropriate images for an adult male to show to a minor female.
>
> Mr. Hunt allegedly displayed these images to [A.H.] in a very short period of time on one particular occasion. So, all these three images are relevant to provide context and to fill out the picture of what occurred at that time.
>
> These are not separate or remote incidents. All three images were allegedly displayed at about the same time.
>
> Only one fits the definition of sexually explicit conduct. The other two, however, are inappropriate given the circumstances and are relevant to allow the State to explain the entire relevant set of circumstances to the jury.

Hunt's counsel continued to object that the other images were irrelevant each time A.H. testified regarding their content.

---

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's credibility . . . may not be proved by extrinsic evidence. They may, however, subject to s. 972.11(2), if probative of truthfulness or untruthfulness and not remote in time, be inquired into on cross-examination of the witness or on cross-examination of a witness who testifies to his or her character for truthfulness or untruthfulness.

¶7 At trial, A.H. testified that Hunt had shown her the images in question in the basement of her grandparents' house. She explained that Hunt walked across the room and held the cell phone in his hand and laughed as he showed her the images, and he admonished her to never tell her mother. On cross-examination, Hunt's counsel asked A.H. the following question: "When your father showed you the pictures on his cell phone, he said something like, hey, do you want to see the kind of stuff that Matt sends me?" The State objected on hearsay grounds, and Hunt's counsel countered that the evidence was admissible as a statement against interest. The circuit court sustained the State's objection.

¶8 Hunt testified that he had never shown A.H. any of the images she described. Hunt explained that, on the day in question, he received a text message from Venske that said "just be glad you don't have a hernia like this." Accompanying the message was a picture of a testicular hernia. Hunt had recently undergone surgery for an umbilical hernia, and he believed the message was meant as a joke. Hunt testified that A.H. was standing next to him when he received the text, but he did not intentionally show it to her, and he immediately turned his cell phone off after viewing the picture. Hunt also stated the image of a woman posing with a deer head described by A.H. was actually the screensaver on his cell phone for approximately a year and a half, and although he never purposefully showed it to A.H., she had seen it on his cell phone during that period. Hunt maintained he had never possessed any image of a cartoon

6

depiction of a woman bending over or any videos of sexual intercourse, and he denied ever receiving text message images from anyone other than Venske.[7]

¶9 Hunt's theory of defense was that A.H. had seen the image of the testicular hernia and embellished the event to include other, more explicit images. Hunt believed the charges against him stemmed from his recent divorce from A.H.'s biological mother and the ensuing battle for custody of their biological daughter, J.H. Hunt also testified that, several months before A.H. leveled accusations against him, she had gotten into a fight with Hunt's mother during a family trip and did not see Hunt for several months after that incident.

¶10 Officer Nachtigal also testified at trial. Officer Nachtigal initially interviewed A.H. at the Fort Atkinson Police Department regarding her complaint against Hunt. Officer Nachtigal explained that, based on his interview with A.H., he had reason to believe Venske was the source of the inappropriate images allegedly sent to Hunt's cell phone. Following his interview with A.H., Officer Nachtigal interviewed Venske and

---

[7] None of the images at issue in this case were recovered from Hunt's cell phone or otherwise admitted into evidence at trial. While Hunt acknowledges that the image of the naked woman posing with a deer head and image of the testicular hernia were, at one time, in his cell phone, he denies that he ever possessed the other images that A.H. alleges he showed her. Because the circuit court determined the image described by A.H. of the cartoon depiction of a woman bending over did not meet the statutory criteria for "sexually explicit conduct," and was never offered into evidence, the image's existence was not established at trial and remains disputed by the parties.

asked him whether he had ever sent any videos to Hunt from his cell phone or computer. Officer Nachtigal testified that Venske denied sending any videos from his cell phone. Hunt's counsel then asked Officer Nachtigal if Venske admitted sending videos to Hunt from his computer, but the State objected on hearsay grounds.

¶11 The circuit court overruled the State's objection after issuing the following hearsay instruction to the jury:

> A witness is not allowed to tell us what somebody else told him to prove that it happened. But the officer, or any witness, is allowed to discuss other conversations simply to establish who said what to whom.
>
> So, if somebody wants to prove that Mr. Venske -- . . . . Did something or didn't do something, they either need to have a witness who saw him do it or have Mr. Venske come in and testify himself.
>
> When the Officer is being allowed to testify about this conversation, it's not to be used by you to determine whether Mr. Venske actually sent something from his phone or not.
>
> It's being admitted simply so you understand the conversation that took place between these two gentlemen. . . .
>
> A statement is not hearsay if it's not used to prove the truth of the matter asserted, is the technical legal definition.

¶12 Hunt's counsel then called Venske, who testified he had sent Hunt text messages that occasionally contained pictures. Venske explained he had sent Hunt a picture of a testicular hernia as a joke following Hunt's hernia surgery, and he also had sent Hunt a picture of a topless woman posing with a

8

deer head. Hunt's counsel then attempted to ask Venske the following question: "There has been allegations against my client that you sent something to Mr. Hunt and he showed it to his daughter involving a man and woman engaging in intercourse. Did you ever send such——" The court interrupted counsel mid-question and pointed out that there was no allegation that the disputed video came from Venske.

¶13 Hunt's counsel replied that Officer Nachtigal had recently testified that A.H. told him Venske was the source of the video. Therefore, it was important for the defense to counter that statement with Venske's own testimony that he had never sent the video. The circuit court disagreed, noting that the question posed by Hunt's counsel to Officer Nachtigal centered on the issue of where A.H. claimed Hunt obtained the video. The court explained, "It seems to me that you are the one who is introducing it in the first place and you are the one that is also introducing contradictory evidence concerning the source." The circuit court concluded the source of the video was a collateral issue and irrelevant to the defense.

¶14 During the jury instruction conference, the circuit court suggested adding language to a pattern instruction indicating that the video of sexual intercourse was the only image supporting the charges against Hunt. Both parties accepted the proposed instruction, and the jury was instructed as follows:

> The second count of the information charges that between September 1st, 2009, and June 30th, 2010, in

the City of Fort Atkinson, Jefferson County, Wisconsin, the defendant did commit the crime of causing a child to view or listen to sexual activity, <u>specifically, a video clip of a man and woman engaging in sexual intercourse</u>.

(Emphasis added). The circuit court also suggested that the parties specify which image was disputed during closing arguments. In addition, the circuit court recommended additional clarifying language to the jury instruction describing the elements of causing a child to view or listen to sexual activity. If accepted, the circuit court would have delivered the following instruction to the jury:

> Element Number 1, the defendant caused [A.H.] to view or listen to sexually explicit conduct. Sexually explicit conduct means actual or simulated sexual intercourse, masturbation, lewd exhibition of an intimate part.
>
> <u>In this case, the State alleges that the video clip of a man and woman engaging in sexual intercourse is sexually explicit conduct</u>.

(Emphasis added).

¶15 Hunt's counsel objected to this latter proposed instruction, however, providing the following explanation:

> I think [the instruction] amplifies it and gives some validity of the State's argument when we tell [the jury] an element of this is what the State is alleging. It's like me adding that what the defense is alleging is a defense as well.

The circuit court agreed, and the second proposed jury instruction was rejected.

¶16 Hunt was found not guilty of the sexual assault charge but guilty of causing a child under 13 to view or listen to sexual activity in violation of Wis. Stat. § 948.055. Hunt was

10

sentenced to seven years of probation and one year of conditional jail time.

¶17 Hunt appealed his conviction, arguing that the circuit court improperly excluded Venske's testimony regarding the video and that his trial counsel rendered ineffective assistance. The court of appeals reversed Hunt's conviction and remanded to the circuit court for a new trial. The court of appeals determined that the circuit court's decision to exclude Venske's testimony was erroneous, because the evidence was relevant and would have corroborated Hunt's version of events. The court of appeals also concluded that the circuit court's error was not harmless, because the outcome of the case turned on the credibility of the parties.

¶18 Although the State argued Officer Nachtigal's testimony regarding his interview with Venske functionally conveyed the same information as Venske's excluded testimony, the court of appeals reasoned that the circuit court's hearsay instruction prevented the jury from considering "whether Venske did or did not send anything from his phone to Hunt . . . ." State v. Hunt, No. 2012AP2185-CR, unpublished slip op., ¶13 (Wis. Ct. App. July 18, 2013). Further, the court of appeals noted that the circuit court's instruction specifically informed jurors "that proof of what Venske did or did not do would have to be established through Venske's testimony, only highlighting the lack of that testimony from Venske." Id. Because the court of appeals reversed Hunt's conviction based on his evidentiary claim, it did not address Hunt's ineffective assistance claims.

11

¶19 Hunt petitioned this court for review, which we granted on December 17, 2013. We now reverse.

## II. STANDARD OF REVIEW

¶20 This court will not disturb a circuit court's decision to admit or exclude evidence unless the circuit court erroneously exercised its discretion. State v. Ringer, 2010 WI 69, ¶24, 326 Wis. 2d 351, 785 N.W.2d 448. "A circuit court erroneously exercises its discretion if it applies an improper legal standard or makes a decision not reasonably supported by the facts of record." Weborg v. Jenny, 2012 WI 67, ¶41, 341 Wis. 2d 668, 816 N.W.2d 191 (citing Johnson v. Cintas Corp. No. 2, 2012 WI 31, ¶22, 339 Wis. 2d 493, 811 N.W.2d 756).

¶21 A circuit court's erroneous exercise of discretion in admitting evidence is subject to the harmless error rule. State v. Harris, 2008 WI 15, ¶85, 307 Wis. 2d 555, 745 N.W.2d 397. Whether the error was harmless presents a question of law that this court reviews de novo. State v. Jackson, 2014 WI 4, ¶44, 352 Wis. 2d 249, 841 N.W.2d 791.

¶22 This case also requires us to determine whether Hunt's trial counsel rendered ineffective assistance. Whether a person was deprived of the constitutional right to the effective assistance of counsel presents a mixed question of law and fact. State v. Trawitzki, 2001 WI 77, ¶19, 244 Wis. 2d 523, 628 N.W.2d 801. The circuit court's findings of fact will be upheld unless they are clearly erroneous. State v. Pitsch, 124 Wis. 2d 628, 634, 369 N.W.2d 711 (1985). Whether counsel's performance was deficient and prejudicial to his or her client's

defense is a question of law that we review de novo. Trawitzki, 244 Wis. 2d 523, ¶19.

¶23 In Strickland, 466 U.S. at 687, the United States Supreme Court set forth a two-part test for determining whether counsel's actions constitute ineffective assistance. First, the defendant must demonstrate that counsel's performance was deficient. Id.; State v. McDowell, 2004 WI 70, ¶49, 272 Wis. 2d 488, 681 N.W.2d 500. Second, the defendant must demonstrate that counsel's deficient performance was prejudicial to his or her defense. Strickland, 466 U.S. at 687; McDowell, 272 Wis. 2d 488, ¶49. This requires a showing that counsel's errors were "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687.

## III. DISCUSSION

¶24 We first consider whether the circuit court erred in excluding Venske's testimony and conclude that it did. We then address whether the error was harmless and hold that it was. Finally, we examine Hunt's three ineffective assistance claims and determine that each argument fails under Strickland's two-part test.

### A. The Circuit Court's Decision to Exclude Venske's Testimony was Harmless Error

¶25 As a threshold matter, we agree with the court of appeals and both parties that the circuit court erred in excluding Venske's testimony that he never sent the video of sexual intercourse to Hunt. Venske's testimony was directly

13

relevant to Hunt's theory of defense.[8] As explained above, Hunt's theory of defense at trial was that A.H. saw an image of a testicular hernia on Hunt's cell phone, and A.H. later embellished that event by alleging that Hunt had also shown her other, more sexually explicit, images. At trial, Venske corroborated Hunt's testimony regarding sending Hunt the photo of a testicular hernia, but the circuit court excluded his testimony that he had never sent Hunt any videos, including the video of sexual intercourse. Venske's excluded testimony would have corroborated Hunt's testimony and lent credibility to Hunt's version of events.

¶26 Thus, we must consider whether the circuit court's error in excluding Venske's testimony was harmless. The erroneous exclusion of testimony is subject to the harmless error rule. See Wis. Stat. § 901.03(1) ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected . . . ."). Harmless error analysis requires us to look to the effect of the error on the jury's verdict. State v. Weed, 2003 WI 85, ¶29, 263 Wis. 2d 434, 666 N.W.2d 485. For the error to be deemed harmless, the party that benefited from the error——here, the

---

[8] Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Wis. Stat. § 904.01. Evidence is deemed to be relevant if it bears "upon any one of [the] countless . . . factors which are of consequence to the determination of the action." Holmes v. State, 76 Wis. 2d 259, 268, 251 N.W.2d 56 (1977).

State——must prove "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." Harris, 307 Wis. 2d 555, ¶42 (quoting Chapman v. California, 386 U.S. 18, 24 (1967)). Stated differently, the error is harmless if it is "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." Harvey, 254 Wis. 2d 442, ¶49 (quoting Neder, 527 U.S. at 18).

¶27 This court has previously articulated several factors to assist in a harmless error analysis, including but not limited to: the importance of the erroneously admitted or excluded evidence; the presence or absence of evidence corroborating or contradicting the erroneously admitted or excluded evidence; the nature of the defense; the nature of the State's case; and the overall strength of the State's case. State v. Norman, 2003 WI 72, ¶48, 262 Wis. 2d 506, 664 N.W.2d 97. Although non-exhaustive, these factors assist in our review of whether the exclusion of Venske's testimony was harmless. We consider each in turn.

¶28 The State and Hunt naturally dispute the importance of the erroneously excluded evidence at issue in this case. Hunt contends the exclusion of Venske's testimony was vitally important because it corroborated his theory of defense. In a case that largely turns on credibility determinations, Hunt argues the court's error in excluding testimony that would have lent credibility to his version of the facts cannot be harmless.

¶29 To be sure, Venske's testimony was relevant to Hunt's theory of defense. This is why we agree with the parties and

15

the court of appeals that it was error for the circuit court to exclude the evidence. The exclusion of relevant evidence, however, does not automatically trigger the need for a new trial. Harmless error analysis is not intended to simply identify errors, but instead is meant to determine whether the error was consequential to the verdict obtained. For this reason, we examine the totality of the circumstances, which requires the reviewing court to gauge whether the admitted or excluded evidence contributed to the trial's outcome.

¶30 In determining the import of the erroneously excluded evidence, we find another factor in particular informs our analysis——that is, the presence or absence of evidence corroborating or contradicting the erroneously admitted or excluded evidence. Hunt testified at trial that Venske had never sent him any videos and, specifically, had never sent him a video of a man and woman engaging in sexual intercourse. Although Venske's testimony on this point was excluded by the circuit court, we agree with the State that Officer Nachtigal's testimony functionally served the same purpose by corroborating Hunt's version of events. See State v. Everett, 231 Wis. 2d 616, 631, 605 N.W.2d 633 (Ct. App. 1999) (holding that exclusion of evidence was harmless where other evidence was heard by the jury that "functionally conveyed the same theory of defense . . . .").

¶31 Hunt argues that Officer Nachtigal's testimony could not have corroborated Hunt's testimony because the jury was instructed by the circuit court that it could use Officer

16

Nachtigal's testimony only to determine "who said what to whom," and not as evidence to ascertain "whether Venske actually sent something from his phone or not." Hunt claims this instruction to the jury rendered Officer Nachtigal's testimony "wholly irrelevant" because it was "stripped of the truth of its content."

¶32 Hunt's argument overstates the implications of the circuit court's hearsay instruction. Simply because the jury could not use Officer Nachtigal's testimony as evidence to prove the truth of what Venske had told him does not render Officer Nachtigal's testimony immaterial. The jury could still use Officer Nachtigal's testimony as evidence to prove that Venske had told Officer Nachtigal that he sent no videos to Hunt. Undoubtedly, Venske's excluded testimony had some probative value to Hunt's defense. However, with respect to corroborating Hunt's testimony that Venske did not send the video of sexual intercourse to Hunt, we conclude that there is little meaningful difference between Venske's assertion that he did not send Hunt a video and Officer Nachtigal's testimony that Venske told him he did not send Hunt a video. The circuit court's instruction accurately informed the jury that it could not conclude, based solely on Officer Nachtigal's testimony, that Venske did not send the video. However, the jury still heard that Venske had represented to the police that he did not send the video, which corroborated what Hunt had already alleged at trial.

¶33 Further, the erroneously excluded evidence would not have assisted Hunt's defense by contradicting the State's

17

evidence regarding the source of the images. The State never suggested at trial that Hunt obtained the images from Venske. In fact, no evidence regarding the source of the images was ever introduced by the State at trial. So, while the excluded evidence would have lent credibility to Hunt's version of events, it would not have served to weaken the State's case on the issue of where Hunt obtained the sexually explicit video, because the State never alleged it was sent by Venske.

¶34 We conclude our harmless error analysis by examining the nature of the defense, the nature of the State's case, and the overall strength of the State's case. Norman, 262 Wis. 2d 506, ¶48. Hunt was charged with one count of causing a child to view or listen to sexual activity in violation of Wis. Stat. § 948.055(1). The statute prohibits "intentionally caus[ing] a child who has not attained 18 years of age . . . to view or listen to sexually explicit conduct . . . ." Id. Under the plain language of the statute, the State is not required to establish the source of the sexually explicit conduct shown to the complainant. The State need only demonstrate that the defendant showed sexually explicit conduct to a child under 18 years of age. Since the source of the video was not a required element of the State's case, the value of Venske's excluded testimony lay solely in its potential to corroborate Hunt's version of events. Thus, any harm arising from the exclusion of Venske's testimony was minimized by the admission of Officer Nachtigal's testimony.

18

¶35 Moreover, the fact that Officer Nachtigal's testimony could not be considered for the purpose of determining whether Venske actually sent Hunt the video is not decisive, because it is clear from a review of the record that the State's case against Hunt was not predicated on whether Hunt received the video of sexual intercourse from Venske.  The strength of the State's case was largely dependent on the specific and consistent testimony of A.H, who was the State's principal witness at trial.  Notably, A.H. never testified about the source of the images on Hunt's cell phone, and the State never raised the issue while making its case to the jury.  The crux of the State's case was not who sent the video of sexual intercourse to Hunt, but rather, whether Hunt showed the video of sexual intercourse to A.H.  Consequently, A.H.'s testimony, and the State's case, focused on A.H.'s detailed description of the circumstances surrounding Hunt showing her inappropriate images on his cell phone, as well as the content of those images.  Therefore, the importance of Venske's excluded testimony was its value in corroborating Hunt's testimony that Venske never sent him a video, a purpose that was effectively achieved by the admission of Officer Nachtigal's testimony.

¶36 In sum, we conclude that the exclusion of Venske's testimony was harmless error.  The jury heard direct testimony from Hunt that Venske did not send him the video of sexual intercourse.  This testimony was corroborated by Officer Nachtigal's testimony that Venske had told him in a police interview that he did not send any videos to Hunt, which

19

bolstered Hunt's version of the facts and was favorable to the defense. Further, the record shows that the State's case did not hinge on establishing the source of the inappropriate images on Hunt's cell phone. The strength of the State's case rested largely on A.H.'s testimony, and the State never raised the issue at trial of where the images on Hunt's phone originated from in proving the essential elements of the crime for which Hunt was convicted. For these reasons, we conclude that it is clear "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." Harris, 307 Wis. 2d 555, ¶42 (quoting Chapman, 386 U.S. at 24).

B. Hunt's Ineffective Assistance Argument

¶37 Hunt's second argument on appeal is that his trial counsel rendered constitutionally ineffective assistance. To support his claim, Hunt points to three separate incidents at trial that he contends amount to ineffective assistance. First, Hunt asserts trial counsel was ineffective for failing to argue an applicable hearsay exception that would permit A.H. to testify that Venske sent the images to Hunt's cell phone. Second, Hunt maintains trial counsel did not effectively argue to prevent testimony regarding the two images described by A.H. that the circuit court determined did not constitute "sexually explicit conduct" as a matter of law. See Wis. Stat. § 948.055(1). Finally, Hunt argues trial counsel was ineffective for failing to accept the circuit court's invitation to include additional clarifying language in the jury instructions. Because Hunt's ineffective assistance claims

20

implicate distinct facts from his evidentiary argument discussed above, we address each individually below. We conclude that, regarding Hunt's first two ineffectiveness claims, Hunt's defense was not prejudiced by the performance of trial counsel. On Hunt's third ineffectiveness claim, we conclude Hunt's counsel was not deficient.

### i. Applicable Legal Principles

¶38 Criminal defendants are guaranteed a right to effective assistance of counsel under the Sixth and Fourteenth Amendments to the United States Constitution. Strickland, 466 U.S. at 685-86; State v. Balliette, 2011 WI 79, ¶21, 336 Wis. 2d 358, 805 N.W.2d 334. In Strickland, a seminal decision on ineffective assistance of counsel claims, the United States Supreme Court set forth a two-part test for establishing that counsel's performance was ineffective: (1) counsel's performance was deficient; and (2) the defendant was prejudiced as a result. 466 U.S. at 687. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id. at 686. In addition, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Id. at 697; see also State v. Johnson, 153 Wis. 2d 121, 128, 449 N.W.2d 845 (1990).

¶39 Regarding the first prong of the Strickland test, the Supreme Court explained counsel's performance is deficient when

21

"in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id. at 690. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. In assessing counsel's performance, a court must make "every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 689.

¶40 Under the second prong of the Strickland test, deficient performance by counsel is prejudicial only if the "errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687. A defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

### ii. Hunt's First Ineffective Assistance Claim

¶41 Hunt first asserts his trial counsel was ineffective for failing to argue that certain testimony by A.H. was admissible under the present sense impression exception to the

22

hearsay rule.[9] During the trial, Hunt's counsel asked A.H. the following question: "When your father showed you the pictures on his phone, he said something like, hey, do you want to see the kind of stuff that Matt sends me?" The State objected on hearsay grounds, and Hunt's counsel argued the testimony was within the scope of cross-examination and admissible under the exception to the hearsay rule for statements against interest.[10] The circuit court sustained the State's objection, noting that Hunt's counsel sought to "introduce a statement of your own client against your own client's interests." On appeal, Hunt argues counsel performed deficiently by failing to argue the evidence was admissible as a present sense impression, and his defense was prejudiced as a result.

---

[9] Hearsay evidence is generally inadmissible at trial. Wis. Stat. § 908.02. However, Wis. Stat. § 908.03(1) provides for the admission of hearsay evidence that describes a present sense impression, defined as "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter."

[10] Wisconsin Stat. § 908.045(4) provides that a statement against interest is admissible as an exception to the general rule against hearsay evidence. A statement against interest is defined as "[a] statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability . . . that a reasonable person in the declarant's position would not have made the statement unless the person believed it to be true." Id. However, this provision only applies if the declarant is unavailable to testify. Wis. Stat. § 908.045. The exception would not apply in this case because the declarant, Hunt, testified on his own behalf shortly after A.H.

23

¶42 The State concedes the present sense impression exception applied to A.H.'s testimony.[11] However, the State argues that "cho[osing] the wrong exception" to the hearsay rule does not rise to the level of deficient performance. The State also asserts that any deficiency by counsel did not prejudice Hunt for purposes of an ineffective assistance claim.

¶43 We conclude Hunt was not prejudiced by trial counsel's failure to cite an applicable hearsay exception. The State's case against Hunt was not predicated on whether he received the video from Venske. Hunt was charged with causing a child to view or listen to sexual activity in violation of Wis. Stat. § 948.055(1). The source of the sexually explicit image is not an essential element of the statute. Had the State brought charges against Venske, the issue of whether Venske sent the video would be unquestionably central to his defense. As it stands, however, the relevant question for the jury to consider was whether Hunt showed A.H. the video, not from whom it was received.

---

[11] We note that, while the State has conceded the present sense impression exception applied to A.H.'s testimony, the question of whether a statement is admissible under a hearsay exception is a question of law. Horak v. Bldg. Servs. Indus. Sales Co., 2012 WI App 54, ¶11, 341 Wis. 2d 403, 815 N.W.2d 400. Because it is our constitutional duty to say what the law is, we are not bound by a party's concessions of law. Lloyd Frank Logging v. Healy, 2007 WI App 249, ¶15 n.5, 306 Wis. 2d 385, 742 N.W.2d 337. However, for the sake of argument, we assume, without deciding, that A.H.'s testimony was admissible under the present sense impression exception to the hearsay rule.

¶44 Therefore, any testimony relating to whether Venske sent the video to Hunt could relate only to the credibility of each party's respective version of events. The testimony that was admitted at trial conveyed two stories: Hunt testifying that Venske did not send him a video, and Officer Nachtigal testifying that A.H. told him in her police interview that the video came from Venske.[12] Officer Nachtigal's testimony functionally conveyed the same information as A.H.'s excluded testimony. Although A.H.'s version of events might have been stronger if she had been allowed to corroborate Officer Nachtigal's testimony, such an outcome would certainly not be helpful to Hunt. If Hunt's counsel had successfully argued for admission of A.H.'s testimony, the jury would have heard her provide only more detailed information about where Hunt obtained the video. Such additional evidence would have been utterly inconsistent with Hunt's own testimony, and far from strengthening his case, might instead have undercut his own credibility. Counsel cannot be ineffective for failing to successfully introduce testimony that might very well have been damaging to Hunt and that was functionally conveyed from another source. We therefore conclude that Hunt's counsel was not ineffective for failing to argue for admission of A.H.'s testimony as a present sense impression.

---

[12] Officer Nachtigal's testimony was further collaborated by the police report recounting his interview with A.H. The police report——which was admitted into evidence at trial——explained A.H. told Officer Nachtigal that when Hunt showed her the video, he remarked, "this is the kind of stuff that [Hunt's] friend [Venske] sends him."

25

iii. Hunt's Second Ineffective Assistance Claim

¶45  Hunt's second ineffective assistance argument is that trial counsel failed to provide the circuit court with the strongest argument for excluding evidence regarding the cell phone image of a topless woman posing with a deer head and the alleged image of a woman bending over.  Hunt's counsel filed a pretrial motion in limine arguing for exclusion of this evidence, but did not mention the motion during the pretrial motion hearing.  During the trial, Hunt's counsel objected to A.H.'s testimony describing these two images on the basis that they were extrinsic and irrelevant.

¶46  Hunt contends his trial counsel performed deficiently in failing to invoke Wis. Stat. § 904.03, which provides for exclusion of evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ."  Specifically, Hunt argues that Wis. Stat. § 904.03 was applicable because the evidence in question posed a high likelihood of confusing or misleading the jury.  According to Hunt, because the other two images described by A.H. also featured offensive sexual conduct, the jury could easily be confused about which image could support a conviction.  As a result, there was a high risk that Hunt would be convicted based on images which the circuit court had already ruled were not "sexually explicit conduct" as a matter of law.  See Wis. Stat. § 948.055(1).  Hunt also points out that the probative value of the evidence was minimal because

it was admitted for the purpose of providing context to A.H.'s testimony.

¶47  The State argues that, even assuming Hunt's counsel performed deficiently in failing to invoke Wis. Stat. § 904.03, the deficiency did not prejudice his defense.

¶48  We agree with the State.[13]  Hunt's argument is premised on the possibility that the jury could have convicted him based on images that did not meet the statutory criteria in Wis. Stat. § 948.055(1).  However, the circuit court's instruction to the jury specified that the only unlawful image was the video of sexual intercourse:

> The second count of the information charges that between September 1st, 2009, and June 30th, 2010, in the City of Fort Atkinson, Jefferson County, Wisconsin, the defendant did commit the crime of causing a child to view or listen to sexual activity, specifically, a video clip of a man and woman engaging in sexual intercourse.

(Emphasis added).  For Hunt's argument to succeed, we would have to assume that the jury failed to adhere to the circuit court's instruction.  However, as Hunt points out in his brief, "[j]urors are presumed to have followed jury instructions." State v. LaCount, 2008 WI 59, ¶23, 310 Wis. 2d 85, 750 N.W.2d 780.

----

[13] As we have previously observed, because the defendant must prove both deficient performance and prejudice under Strickland's two-part test in order to establish ineffective assistance of counsel, courts "may reverse the order of the two [Strickland] tests or avoid the deficient performance analysis altogether if the defendant has failed to show prejudice[.]" State v. Johnson, 153 Wis. 2d 121, 128, 449 N.W.2d 845 (1990).

27

¶49 In addition, during the supplemental postconviction motion hearing, the circuit court explained that even if Hunt's counsel had raised the confusion argument at trial, the outcome would have been no different:

> I don't think that the confusion argument is particularly compelling.
>
> . . . . Even if it were made, I would not have granted the objection on that basis because the danger of confusion is really relatively low here. Especially given the fact that I instructed the jury that the image of the two people allegedly engaging in a sex act is the image that constitutes the basis for that criminal charge.
>
> . . . . The other two images, as they have been referred to today and elsewhere on the record, were highly probative for the reasons I have previously indicated.
>
> That highly probative value substantially outweighs whatever danger of confusion might have been present and I find that any risk of confusion was relatively low.

¶50 In arguing that evidence of the two images described by A.H. posed a significant risk of confusing the jury, Hunt overlooks that he also introduced evidence of an additional offensive image at trial——that is, the picture of a testicular hernia. If there was a risk of confusion to the jury, it was created equally by both sides. Hunt cannot convincingly argue that his own evidence posed "no real danger" of confusion, but that comparable evidence introduced by the prosecution should have been excluded.

¶51 For these reasons, we conclude that Hunt failed to meet his "burden of showing that the decision reached would

28

reasonably likely have been different absent the errors" under his second ineffective assistance of counsel claim. <u>Strickland</u>, 466 U.S. at 696.

### iv. Hunt's Third Ineffective Assistance Claim

¶52 Hunt's final ineffective assistance claim is that trial counsel was deficient for failing to ensure the jury instructions clearly distinguished between the images that were discussed at trial. During the jury instruction conference, the circuit court suggested adding clarifying language to the jury instruction describing the elements of causing a child to view or listen to sexual activity. The proposed instruction would have specified that the contested image in this case was the video of sexual intercourse, not the other images described by A.H. If accepted, the circuit court would have delivered the following instruction to the jury:

> Element Number 1, the defendant caused [A.H.] to view or listen to sexually explicit conduct. Sexually explicit conduct means actual or simulated sexual intercourse, masturbation, lewd exhibition of an intimate part.
>
> <u>In this case, the State alleges that the video clip of a man and woman engaging in sexual intercourse is sexually explicit conduct.</u>

(Emphasis added). Hunt's trial counsel objected to the additional language, and Hunt now argues his trial counsel lacked a valid strategic reason for the objection. Hunt maintains that, due to the nature of the images described by A.H., there was a heightened risk the jury would convict him

29

based on an image that did not meet the statutory criteria for "sexually explicit conduct" under Wis. Stat. § 948.055(1).

¶53 The State asserts that counsel's decision to object to the instruction was a legitimate strategic decision, and as such, it cannot form the basis for an ineffective assistance claim.

¶54 We agree with the State that counsel's performance was not deficient. During the jury instruction conference, Hunt's counsel provided the following rationale in support of his objection to the proposed instruction:

> I think [the instruction] amplifies it and gives some validity of the State's argument when we tell [the jury] an element of this is what the State is alleging. It's like me adding that what the defense is alleging is a defense as well.

Hunt's counsel also referred to the circuit court's previous amended jury instruction, which already clarified that the video of sexual intercourse was the basis for the State's charge. In response to Hunt's objection, the circuit court explained, "Okay, I don't mind if we take that one out. . . . I want the jury to be on notice of what image we are talking about, and I think we have covered that in [the previous instruction]. . . . I'm agreeing with you."

¶55 Hunt's counsel weighed the possibility of juror confusion against the likelihood that the proposed instruction would appear to legitimize the State's allegations, and he made a reasonable strategic choice to object to the instruction. Hunt's counsel concluded that the circuit court's other amended

jury instruction would rectify any possible confusion about which image formed the basis for the State's complaint. We find no reason for concluding that counsel's strategic decision "fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. To the contrary, the circuit court later expressed agreement with the reasoning of Hunt's counsel.[14] "A strategic trial decision rationally based on the facts and the law will not support a claim of ineffective assistance of counsel." State v. Elm, 201 Wis. 2d 452, 464-65, 549 N.W.2d 471 (Ct. App. 1996). We will not "second-guess[] the trial counsel's considered selection of trial tactics or the exercise of a professional judgment in the face of alternatives that have been weighed by trial counsel." State v. Felton, 110 Wis. 2d 485, 502, 329 N.W.2d 161 (1983). Therefore, we conclude that counsel's decision to object to the circuit court's second

---

[14] In Hunt's postconviction motion hearing, the circuit court explained:

> [Hunt's trial counsel's] stated strategy was that he did not want that to be in the instruction because it might convey to the jury that the Court believed that the video image in question was, in fact, sexually explicit conduct.

> That's a legitimate strategy decision. . . . [I]n hindsight, I think [Hunt's trial counsel] was right about that. It probably would have been detrimental to the defense to have that explanation in [the jury instruction], because it could have placed that quality on the assertion in the instruction that this has been endorsed by the Court as constituting sexually explicit conduct.

amended jury instruction was not deficient performance for purposes of an ineffective assistance of counsel claim.[15]

## IV. CONCLUSION

¶56 Because Venske's testimony was relevant to Hunt's theory of defense and corroborated his version of events, we hold that the circuit court erred in excluding the testimony. However, we conclude that the State met its burden of proving that it is "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error," Harvey, 254 Wis. 2d 442, ¶49 (quoting Neder, 527 U.S. at 18), and thus, the error was harmless. We further determine that Hunt's ineffective assistance of counsel claims fail under the two-part

---

[15] Hunt also argues that his trial counsel's alleged deficiencies, taken in the aggregate, had a significant, prejudicial impact on his defense. It is true that we consider the cumulative effect of counsel's deficiencies when assessing whether the prejudice standard in Strickland has been satisfied. State v. Thiel, 2003 WI 111, ¶59, 264 Wis. 2d 571, 665 N.W.2d 305. As this court has previously explained, "[j]ust as a single mistake in an attorney's otherwise commendable representation may be so serious as to impugn the integrity of a proceeding, the cumulative effect of several deficient acts or omissions may, in certain instances, also undermine a reviewing court's confidence in the outcome of a proceeding." Id., ¶60. This approach is inapplicable, however, in situations——such as this case——where the reviewing court concludes that the alleged errors, taken in isolation, did not constitute a deficient act or omission. "[E]ach alleged error must be deficient in law—— that is, each act or omission must fall below an objective standard of reasonableness——in order to be included in the calculus for prejudice." Id., ¶61. Because we conclude that one of the alleged errors raised by Hunt are not deficient as a matter of law, we cannot address Hunt's aggregacy argument, as we do not find any, let alone multiple, instances of deficient performance.

inquiry of <u>Strickland</u>, 466 U.S. at 687 (1984).  We conclude that, under the totality of the circumstances, Hunt received a fair trial, and our confidence in the judgment is not undermined.  Accordingly, we reverse the decision of the court of appeals and reinstate the circuit court's judgment of conviction and affirm its denial of Hunt's post-conviction motion.

*By the Court.*—The decision of the court of appeals is reversed.

¶57 ANN WALSH BRADLEY, J. *(dissenting).* The State of Wisconsin seeks review of an unpublished per curiam opinion of the court of appeals that reversed the defendant's conviction.

¶58 This is not a close case on the relevant issue of law, that is, whether the circuit court committed error in excluding key witness testimony necessary to support the defendant's version of events. Rather, this is a case where both parties, the court of appeals, the majority, and I all conclude that it was error.[1]

¶59 I part ways with the majority, however, when it concludes that the error is harmless. Its conclusion is based on the faulty assertion that there is "little meaningful difference" between the probative value of Venske's excluded testimony and the probative value of Officer Nachtigal's admitted testimony. Majority op., ¶32.

¶60 To support this conclusion the majority has to ignore both logic and the law of evidence. When an out-of-court statement is admitted to show the event occurred but specifically is not admitted for the truth of the matter asserted, its probative value in ascertaining the truth of the matter asserted is minimal, if any. Contrary to the majority's assertion, it is meaningfully different in probative value than

---

[1] Accordingly, there is no law development function that we engage in here. The test for determining whether the error is harmless is well established. We are left to address only an error correction function, one that this court does not normally perform. See Wis. Stat. § (Rule) 809.62(1r).

1

relevant in-person testimony which is offered for the truth of the assertion.

¶61 This was a he-said——she-said case. The excluded evidence was the only evidence available to corroborate either version of the events——and it corroborated the defendant's version.

¶62 After reviewing all of the relevant factors in a harmless error analysis, I conclude that the exclusion of key testimony supporting the defendant's credibility was not harmless. Accordingly, I respectfully dissent.[2]

I

¶63 Hunt was charged with showing an obscene video on his cell phone to his stepdaughter. She told police that the video had been sent by Hunt's friend, Venske. Hunt testified that he never had a video like the one she described and that he had not received any such video from Venske. The circuit court excluded Venske's corroborating testimony that he never sent any videos to Hunt.

¶64 The majority determines as a threshold matter that the circuit court erred in excluding Venske's relevant testimony "that he had never sent Hunt any videos, including the video of sexual intercourse." Majority op., ¶25. It acknowledges that

---

[2] Because this issue is dispositive, I do not address the majority's ineffective assistance of counsel analysis. However, I note that the majority's analysis appears to continue a troubling trend of paying lip service to Strickland v. Washington, 466 U.S. 668 (1984), while deviating from the principles of Strickland itself. See State v. Starks, 2013 WI 69, ¶82, 349 Wis. 2d 274, 833 N.W.2d 146 (Bradley, J., dissenting).

"Venske's testimony was directly relevant to Hunt's theory of defense" because "Venske's excluded testimony would have corroborated Hunt's testimony and lent credibility to Hunt's version of events." Nevertheless, it concludes that the error was harmless. Id.

¶65 The majority notes that although the excluded testimony had value in corroborating Hunt's testimony, that purpose "was effectively achieved by the admission of Officer Nachtigal's testimony." Id., ¶35. Specifically, it determines that Officer Nachtigal's testimony that Venske told him that he had not sent Hunt the video "functionally served the same purpose as Venske's excluded testimony by corroborating Hunt's version of events." Id., ¶30. Even though the circuit court instructed the jury not to use the officer's testimony to determine "whether Venske actually sent something from his phone or not," the majority concludes that there was "little meaningful difference" between the probative value of Venske's excluded testimony and the probative value of Officer Nachtigal's admitted testimony. Id., ¶¶31, 32.

II

¶66 The majority's determination of harmless error rests primarily on its erroneous conclusion that Officer Nachtigal's testimony was essentially as valuable to the defense as Venske's excluded testimony would have been. Id., ¶¶10, 30-32. Undermining the majority's conclusion is the fact that the jury was specifically instructed not to consider for the truth of the matter asserted Nachtigal's testimony about what Venske told

3

him. The circuit court's instruction was detailed and unusually specific, and bears repeating in its entirety:

> A witness is not allowed to tell us what somebody else told him to prove that it happened. But the officer, or any witness, is allowed to discuss other conversations simply to establish who said what to whom.
>
> So, if somebody wants to prove that Mr. Venske ——
>
> [COUNSEL]: That is correct.
>
> THE COURT: Did something or didn't do something, they either need to have a witness who saw him do it or have Mr. Venske come in and testify himself.
>
> When the Officer is being allowed to testify about this conversation, <u>it's not to be used by you to determine whether Mr. Venske actually sent something from his phone or not.</u>
>
> It's being admitted simply so you understand the conversation that took place between these two gentlemen.
>
> That's the best explanation I can give you for hearsay. You spend about three months on it in law school, and that's the nutshell version.
>
> A statement is not hearsay if it's not used to prove the truth of the matter asserted, is the technical legal definition.

(Emphasis supplied.) It is difficult to imagine what else the circuit court could have done to communicate to the jury that it could not consider Officer Nachtigal's testimony as probative of whether or not Venske actually sent the video to Hunt.

¶67 In light of this detailed jury instruction, there is no logical way to reconcile the majority's suggestion that the jury could use Officer Nachtigal's testimony as probative in proving what Venske told him, with the court's instruction that

4

it could not use it for that purpose. The court instructed: "it's not to be used by you to determine whether Mr. Venske actually sent something from his phone or not."

¶68 The only way to make any sense of the conclusion that the majority embraces is that the majority assumes that the jury did not heed the court's instruction. However, the jury is presumed to have followed the court's instructions. State v. LaCount, 2008 WI 59, ¶23, 310 Wis. 2d 85, 750 N.W.2d 780; see also State v. Gary M.B., 2004 WI 33, ¶33, 270 Wis. 2d 62, 676 N.W.2d 475 ("When a circuit court gives a proper cautionary instruction, appellate courts presume that the jury followed that instruction and acted in accordance with the law."); State v. Poellinger, 153 Wis. 2d 493, 507, 451 N.W.2d 752 (1990) ("[O]nce the jury has been properly instructed on the principles it must apply to find the defendant guilty beyond a reasonable doubt, a court must assume on appeal that the jury has abided by those instructions."). The majority undermines the presumption and calls into question whether the circuit court's instructions had any effect.

## III

¶69 The majority's conclusion also rests on a misperception of the law of evidence. The majority mistakenly treats Officer Nachtigal's testimony about Venske's out-of-court statement, admitted to prove that a conversation occurred, as having essentially the same probative value as direct testimony from Venske. In his instruction to the jury, the circuit court correctly explained the difference.

5

¶70 Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Wis. Stat. § 908.01(3). Here the statement was that Venske did not send Hunt the video. As the circuit court specifically instructed, this statement by Venske to Officer Nachtigal was not admitted into evidence for the truth of the statement. Rather it was admitted to explain how Officer's Nachtigal's investigation proceeded. State v. Wilson, 160 Wis. 2d 774, 779, 467 N.W.2d 130 (Wis. Ct. App. 1991) ("Where a declarant's statement is offered for the fact that it was said, rather than for the truth of its content, it is not hearsay."). This type of evidence has been held admissible under res gestae, which literally means that the thing happened, "things done" or "thing transacted." Black's Law Dictionary 1310 (7th ed., 1999).

¶71 Nachtigal's testimony has little, if any, probative value in regards to proving the truth of the statement that Venske did not send a video to Hunt. "Probative value" has been defined as "the tendency of evidence to establish the proposition that it is offered to prove." 1 Charles T. McCormick on Evidence 774 (4th ed. 1992). Even if there is some minimal probative value, proving that the conversation took place is different than proving as true what was said in the conversation. See State v. Payano, 2009 WI 86, ¶81, 320 Wis. 2d 348, 768 N.W.2d 832 (2009) ("Essentially, probative value reflects the evidence's degree of relevance. Evidence that is

6

highly relevant has great probative value, whereas evidence that is only slightly relevant has low probative value.").

¶72 In light of the circuit court's jury instruction that Officer Nachtigal's testimony could not be used for the truth of the matter asserted, the majority's conclusion of "little meaningful difference" between the probative value of Venske's excluded testimony and the probative value of Officer Nachtigal's admitted testimony is baffling. Majority op., ¶32. Contrary to the majority's conclusion, there is a vast probative difference. It takes both a leap of logic and the law to conclude otherwise.

IV

¶73 This court has repeatedly stated that a harmless error analysis considers the totality of the circumstances. State v. Beamon, 2013 WI 47, ¶3, 347 Wis. 2d 559, 830 N.W.2d 681 ("A harmless error analysis asks whether, based on the totality of the circumstances, it is clear beyond a reasonable doubt that a rational jury, properly instructed, would have found the defendant guilty."); State v. Patricia A.M., 176 Wis. 2d 542, 556-57, 500 N.W.2d 289 (1993) ("[A] reviewing court must look to the totality of record and determine whether the error contributed to the trial's outcome.").

¶74 The majority correctly observes that this court has previously articulated a number of factors to assist in a harmless error analysis, including the importance of the erroneously admitted or excluded evidence, the presence or absence of evidence corroborating or contradicting the

7

erroneously admitted evidence, the nature of the State's case, the overall strength of the State's case, and the nature of the defense. Majority op., ¶27 (citing State v. Norman, 2003 WI 12, ¶48, 262 Wis. 2d 605, 664 N.W.2d 97).

¶75 Although the majority pays lip service to the totality of the circumstances, its focus appears narrow. In all but one of the factors it considers, the majority relies on the strength of Officer Nachtigal's testimony. This almost singular focus is contrary to our harmless error jurisprudence.

¶76 In considering the first factor, importance, the majority determines it is informed by the presence or absence of corroborating evidence. Id., ¶30. It notes that although Venske was not allowed to testify, Officer Nachtigal's testimony served the same function. Id., ¶¶32, 35.

¶77 In addressing the nature of the case, the majority again relies on the strength of Officer Nachtigal's testimony. It reasons that because the State was not required to prove how Hunt obtained the video, the only value in Venske's testimony was to corroborate Hunt's version of events. Thus, it determines, "any harm arising from the exclusion of Venske's testimony was minimized by the admission of Officer Nachtigal's testimony." Id., ¶34.

¶78 Next, in its discussion of the nature and strength of the State's case against Hunt, the majority observes that the State's case was not predicated on whether Hunt received the video from Venske. Id., ¶35. It then reiterates that the value of Venske's testimony was in corroborating Hunt's testimony, "a

8

purpose that was effectively achieved by the admission of Officer Nachtigal's testimony." Id.

¶79 The only point at which the majority relies on a different basis is in its discussion of Hunt's defense. Id., ¶33. There, it notes that the State never suggested at trial that Hunt obtained the video from Venske. Thus, it reasons, although the excluded evidence would have lent credibility to Hunt's version of events, it would not have weakened the State's case. Id.

¶80 Overall, the majority's conclusion that the error in excluding Venske's testimony was harmless relies fundamentally on its erroneous assertion that Officer Nachtigal's testimony was the functional equivalent of Venske's. The majority continuously emphasizes its focal point that Nachtigal's testimony filled the void left by the exclusion of Venske's testimony. It is hard to square what is essentially the singular focus in the majority's harmless error analysis with the directive to consider the totality of the circumstances.

V

¶81 Contrary to the majority, after considering the totality of the circumstances, I conclude that the State has not shown beyond a reasonable doubt that the circuit court's erroneous exclusion of Venske's testimony was harmless.

¶82 In assessing whether an error is harmless, "we focus on the effect of the error on the jury's verdict." State v. Weed, 2003 WI 85, ¶29, 263 Wis. 2d 434, 666 N.W.2d 485. We have described the test as "whether it appears beyond a reasonable

9

doubt that the error complained of did not contribute to the verdict obtained." Id. (quoting State v. Harvey, 2002 WI 93, ¶44, 254 Wis. 2d 442, 647 N.W.2d 189, quoting in turn Neder v. United States, 527 U.S. 1, 15-16 (1999)). To conclude that an error "did not contribute to the verdict . . . a court must be able to conclude 'beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.'" Id. (quoting Harvey, 254 Wis. 2d 442, ¶48 n.14).

¶83 As previously noted, we are to consider the totality of the circumstances when conducting a harmless error analysis. Beamon, 347 Wis. 2d 559, ¶3. This court has articulated a number of factors which include: the nature of the case, the importance of the erroneously admitted or excluded evidence, the nature of the error and the alleged harm caused, the presence or absence of evidence corroborating or contradicting the erroneously admitted or excluded evidence, whether the erroneously admitted evidence duplicates untainted evidence, the nature of the defense, the nature of the State's case, and the overall strength of the State's case. Norman, 262 Wis. 2d 506, ¶48; Weed, 263 Wis. 2d 434, ¶30; see also State v. Rhodes, 2011 WI 73, ¶33, 336 Wis. 2d 64, 799 N.W.2d 850.

¶84 Considering the nature of the case, the excluded evidence was of high importance. This case presents two versions of what happened: the events as relayed by A.H. and the events as relayed by Hunt. There was no evidence of what happened on the day in question other than their statements. In

10

these circumstances, the primary focus is on the credibility of these witnesses.

¶85 "Corroborating evidence is often the key to breaking credibility deadlocks." Daniel D. Blinka, 7 Wisconsin Practice Series: Wisconsin Evidence, § 420.5 at 294 (3d ed. 2008); see also State v. Daniels, 160 Wis. 2d 85, 109, 465 N.W.2d 633 (1991) (error not harmless when the excluded evidence "was needed to bolster the defendant's credibility"). Venske's testimony would have corroborated Hunt's version of events and thus was important to the credibility determination. Accordingly, the nature of the case and the importance of the excluded evidence weigh against a determination that the error was harmless.

¶86 In this context, the nature of the error is particularly onerous. Defendants have a constitutional right to present a defense. As the United States Supreme Court has repeatedly observed, "few rights are more fundamental than that of an accused to present witnesses in his own defense." Chambers v. Mississippi, 410 U.S. 284, 302 (1973) (citations omitted).

¶87 Our caselaw stresses the importance of allowing a defendant to "produce supporting evidence" to corroborate his or her version of events. Daniels, 160 Wis. 2d at 104 (a defendant should not be "limited merely to his own assertion but should be allowed to produce supporting evidence" to corroborate his testimony). Here, the excluded testimony was necessary to

bolster Hunt's version of events. This weighs against a determination that excluding Venske's testimony was harmless.

¶88 There was no admitted evidence that duplicated or corroborated the erroneously excluded evidence. In this case the only evidence that could be considered duplicating or corroborating the excluded testimony was Officer's Nachtigal's testimony about what Venske told him. Given that Officer Nachtigal's testimony could not be considered for the truth of "whether Venske actually sent something from his phone or not" it was of no value as corroborating evidence. There was no other evidence to take the place of the erroneously excluded evidence. Further, the jury instruction explaining that proof of what Venske did or did not do would have to be established through Venske's testimony only highlighted the lack of such testimony from Venske. As such, this factor also cuts against a conclusion of harmless error.

¶89 The other factors this court has offered to assist in harmless error analysis also demonstrate that the State has not met its burden of showing beyond a reasonable doubt that the error did not contribute to the verdict. The majority briefly alludes to the "strength of the State's case" which it frames as "largely dependent on the specific and consistent testimony of A.H., who was the State's principal witness at trial." Majority op., ¶35. However, it omits any specific discussion of A.H.'s testimony, and the strength of any other evidence of guilt. Compare id. with State v. Evers, 139 Wis. 2d 424, 450, 407 N.W.2d 256 (1987) (examining the record as a whole, finding that

12

the "evidence of guilt was overwhelming," and concluding that the error of admitting prior crimes testimony was harmless beyond a reasonable doubt). A closer look at the State's case reveals that the fact that it was dependent on A.H.'s testimony was part of its weakness. This was a case of he-said—she-said, and the excluded evidence was the only available evidence to corroborate either version of the story.

¶90 These factors, considered in light of the totality of the circumstances, create a reasonable doubt that a rational jury would have found the defendant guilty had the erroneously excluded evidence been admitted. Hunt's sole conviction depended on the jury's belief that he had the video on his phone, despite Hunt's testimony to the contrary. The case turned on the relative credibility of Hunt and A.H., and Venske's excluded testimony was the only testimony offered to bolster either story.

VI

¶91 In sum, I conclude that the State failed to meet its burden of proving that the erroneous exclusion of testimony was harmless. It was "directly relevant to Hunt's theory of defense" and "would have corroborated Hunt's testimony and lent credibility to Hunt's version of events." Majority op., ¶25.

¶92 Contrary to the majority, I conclude that the exclusion of key testimony going to the defendant's credibility, in this case involving two competing versions of events, was not harmless. Accordingly, I respectfully dissent.

13

¶93  I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON and Justice DAVID T. PROSSER, JR., join this dissent.

14